609 So.2d 195 (1992)
Terrie TUGWELL
v.
STATE FARM INS. CO. & Zurich Ins. Co.
No. 92-C-0931.
Supreme Court of Louisiana.
November 30, 1992.
Rehearing Denied January 28, 1993.
*196 Joseph L. Waitz, Waitz & Downer, Houma, Milton O'Neal Walsh, Baton Rouge, for applicant.
Richard G. Creed, Jr., Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, for respondent.
COLE, Justice.

THE ISSUE
The issue presented in this case is whether a signed rejection of uninsured motorist coverage in an umbrella insurance policy meets the statutory and jurisprudential requirements for a rejection where the application form did not offer the option of selecting lower limits and failed to inform the insured of this option.

THE FACTS
On July 31, 1983, Jimmy Thompson applied to State Farm for a "personal liability umbrella" insurance policy with a liability limit of $1,000,000. In a section of the application titled REJECTION OF UNINSURED MOTORISTS COVERAGE, Thompson's signature appears below the following statement: "In keeping with the provisions of the laws of my state, I have been offered the opportunity to purchase Uninsured Motorists coverage, and I hereby reject Uninsured Motorists coverage as a part of this application."
On April 4, 1987, plaintiff was a guest passenger in a 1985 Toyota owned by Jimmy Thompson which collided with an automobile driven by an uninsured motorist. The Toyota was covered under a primary automobile insurance policy with UM coverage of $100,000 and the excess umbrella policy mentioned above with liability coverage of $1 million. Both policies were with State Farm. Plaintiff filed a motion for summary judgment, urging the umbrella policy provided $1 million in UM coverage. State Farm filed a cross motion for summary judgment asserting UM coverage had been validly waived for the umbrella policy and thus State Farm only provided $100,000 in UM coverage under the automobile insurance policy. The trial court denied plaintiff's motion and granted State Farm's motion, holding State Farm's liability was limited to $100,000 in UM coverage. The court of appeal affirmed.[1] Plaintiff applied to this court and writs were granted.[2] We now reverse.

THE LAW
At all times relevant to this case, LA.REV.STAT. § 22:1406(D)(1)(a) required uninsured motorist (UM) coverage "in not less than the limits of bodily injury liability provided by the policy." However, such UM coverage was not required "where any insured named in the policy [rejected] in *197 writing the coverage or select[ed] lower limits." The statute did not specify how a rejection or selection of lower limits was to be effected. This court has held a valid rejection or selection of lower limits must be in writing and signed by the named insured or his legal representative. Henson v. Safeco Insurance Companies, 585 So.2d 534, 538 (La.1991); Giroir v. Theriot, 513 So.2d 1166, 1168 (La.1987); A.I.U. Insurance Co. v. Roberts, 404 So.2d 948, 951-52 (La.1981). Further, the insurer must place the insured in a position to make an informed rejection of UM coverage. Henson, 585 So.2d at 539. In other words, the form used by the insurance company must give the applicant the opportunity to make a "meaningful selection" from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage.

Scope of Review
Although plaintiff in her supplemental and amending petition generally alleged "there [did] not appear to be a rejection of uninsured motorist coverage," plaintiff did not raise the specific argument that the initial rejection was improper until her application to this court. However, this should not deter us from making a decision on this issue where the evidence in the record is sufficient to do so. La.Code Civ. Proc. art. 2164 states in part: "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." Further, the Official Revision Comment to the article states the purpose of the article is:
to give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below.

Summary Judgment
Appellate courts should review the granting of a summary judgment de novo under the same criteria governing the trial court's consideration of whether a summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991). Under La.Code Civ.Proc. art. 966, a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue as to material fact and mover is entitled to judgment as a matter of law.
Because defendant was not entitled to judgment as a matter of law, we reverse the court of appeal decision which affirmed the trial court's granting of defendant's motion for summary judgment. The initial rejection of UM coverage signed by Thompson does not meet the statutory and jurisprudential requirements for a rejection to be effective.

Standard of Review/Burden of Proof
The object of the UM legislation is to promote full recovery for innocent automobile accident victims by making uninsured motorist coverage available for their benefit. Hoefly v. Government Employees Insurance Co., 418 So.2d 575, 578 (La.1982). The statute is to be liberally construed, such that the statutory exceptions to the coverage requirement are interpreted strictly. Any exclusion from coverage in an insurance policy must be clear and unmistakable. The insurer bears the burden of proving any insured named in the policy rejected in writing UM coverage equal to bodily injury limits or selected lower limits. Henson, 585 So.2d at 538; Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987).

Rejection of UM Coverage
This court in Roger, 513 So.2d at 1132, stated for a rejection to be valid under LA.REV.STAT. § 22:1406(D)(1)(a), the insured or his authorized representative must expressly state in a document that UM coverage is rejected in Louisiana as to a particular policy. The insured in this case appears to have expressly rejected UM coverage pursuant to Roger. However, the lower courts have also interpreted the statute to require that the form give the insured the option of selecting limits lower than the full liability limits. This court has not yet *198 passed on the legitimacy of this interpretation.[3]
Illustrative of this approach is Uhrich v. National Fire Insurance Co., 569 So.2d 1062 (La.App. 3d Cir.1990), writ denied, 572 So.2d 96 (1991). In Uhrich, the third circuit held a rejection was invalid where the form did not allow the option of selecting lower limits. The court stated:
This court has repeatedly reaffirmed the rule that a document, which fails to offer UM coverage in amounts lower than the liability coverage, does not satisfy the requirements mandated by the UM statute. This "meaningful selection" rule is well-reasoned, since an insured must be given a meaningful selection from which to choose if the UM statute is to be followed. Otherwise, an insured who desires lower limits of UM coverage would be forced to reject UM coverage simply because the UM insurance form fails to comply with the statute.
....
... If an insurer is going to avail itself of the statutory exception, it must show that the insured initially had the option of selecting lower UM limits. Anything less fails to satisfy the requirements of LSA-R.S. 22:1406(D).
Uhrich, 569 So.2d at 1064-65 (citations omitted).
The court went on to find a rejection was invalid where the application form offered only two options, full UM coverage, or a rejection of UM coverage, and did not contain a blank wherein the insured could have requested limits lower than the full liability coverage.
We agree with the Uhrich interpretation of the statute. The UM statute provides that UM coverage in an amount equal to the liability limits is automatic unless such coverage is completely rejected or the lower limits are selected. The statute thus provides the insured with three options: UM coverage equal to bodily injury limits in the policy, UM coverage lower than those limits, or no UM coverage. A rejection on a form that prohibits the insured from choosing limits below liability coverage or which automatically chooses a certain lower amount for the insured, does not meet the statutory requirements because it forecloses options available to the insured by law. In this case, the Umbrella Liability Policy application form only provided a space for the insured to reject coverage completely. There was no space provided in which he could choose limits lower than the liability coverage. Therefore, it fails to meet the requirements of the statute.[4]
We would note that although we agree with the third circuit's interpretation of the statute in Uhrich, we disagree with its approach in Bertrand v. Shelter General Insurance Co., 571 So.2d 861 (La.App. 3d Cir.1990). In that case, the rejection seemed valid because it was clear and unequivocal and because the application provided blank spaces in which the insured could choose limits of UM coverage, thus meeting the requirement of Uhrich. However, plaintiffs argued that the rejection was nevertheless invalid because the insured was never "informed" of the option of UM limits in any amount other than an amount equal to bodily injury limits. The court rejected the argument, stating, "We can find nothing in the statute or the jurisprudence which would require that for a rejection of UM coverage to be valid, an insured must be informed of his option to *199 select lower limits."[5]Bertrand, 571 So.2d at 866.
Implicit in the statute's requirement that the insurer make available to the insured the option of selecting lower limits is the idea that the insured be made aware of that option. Uhrich's requirement that the insured be given the option of selecting lower limits would be empty protection indeed if the insurer were not also required to make sure the insured is informed of such an option. An insured cannot exercise an option he does not know exists. This can be accomplished in several ways. For example, the insurer can require the insured to acknowledge in writing he has been informed of the options; or, the application itself can be set up in such a way through the use of blanks and boxes that it is apparent to the reasonable person that he has the option of selecting any lower limit he chooses.[6]

Applicability to Umbrella Policies
On November 4, 1983 in Southern American Insurance v. Dobson, 441 So.2d 1185, 1190 (La.1983), this court found on rehearing that the UM statute, LA.REV. STAT. § 22:1406, was applicable to umbrella policies. State Farm seemed to assert in oral argument that because the rejection in this case was signed on July 31, 1983, before Southern American was handed down, the rejection did not have to meet the statutory requirements. This is incorrect. The court in Southern American only interpreted the coverage of the statute and did not create new law. In fact, the court held therein that umbrella policies obtained well before the Southern American holding provided UM coverage.
For the foregoing reasons, the judgment of the court of appeal affirming the trial court's granting of State Farm's motion for summary judgment is reversed. The case is remanded to the trial court for proceedings consistent with this opinion.
REVERSED, AND REMANDED.
NOTES
[1] 597 So.2d 1039 (La.App. 1st Cir.1992). Neither court addressed the issue of whether the initial rejection was valid. Because we dispose of the case on this issue alone, we need not address plaintiff's other assignments of error concerning whether or not the policy in existence at the time of the accident was a renewal policy or a new policy requiring a new rejection of UM coverage.
[2] 600 So.2d 654 (La.1992).
[3] But see Henson, 585 So.2d at 539 n. 3, where this court referred in a footnote to the "statutory and jurisprudential requirement on the insurer to provide a place to select lower limits."
[4] Since this case deals with the validity of a total rejection of UM coverage and not a selection of lower limits, we will only address the jurisprudence in the former area. However, we note that the requirement that a choice of limits be made available to the insured also applies in determining whether a selection of lower limits is valid. See, e.g., Guilbeau v. Shelter Mutual Ins. Co., 549 So.2d 1250, 1254-55 (La.App. 3d Cir.1989); Carlson v. Safeco Ins. Co., 499 So.2d 664, 666-67 (La.App. 3d Cir.1986), writ denied, 503 So.2d 477 (1987); and Aramburo v. Travelers Ins. Co., 426 So.2d 260, 261-62 (La.App. 4th Cir.), writ denied, 433 So.2d 161 (1983), modified, 438 So.2d 274 (La.App. 4th Cir.), writ denied, 443 So.2d 1110 (1983).
[5] See also Guilbeau v. Gabriel, 553 So.2d 1078, 1080 (La.App. 3d Cir.1989), writ denied, 559 So.2d 138 (1990).
[6] Bertrand noted there is such a duty to inform where the validity of a selection of lower limits is at issue. It is illogical to hold the same duty does not apply where a rejection is involved, because the very reason the insured may have rejected UM coverage is that he did not know of his option to select lower limits. There are other cases which imply the duty to inform applies not only to a selection of lower limits but also to a rejection of UM coverage. See Breaux v. Government Emp. Ins. Co., 373 So.2d 1335, 1338 (La.App. 1st Cir.1979) where, in a selection of limits case, that court stated "when the named insured rejects such coverage or opts for lower limits" he can only exercise the option "when he is informed of his option privilege by the insurer"; and Joseph v. Foremost Ins. Co., 532 So.2d 909, 910 (La.App. 5th Cir.1988) where the court in a rejection case stated, "[T]he statute requires the insurer to inform the insured of his option to reject or select lower limits."