11 PLOTKIN, Judge.
Defendant United Services Automobile Asso. (USAA) appeals a trial court judgment on uninsured motorist liability in favor of plaintiff Don E. Carter, M.D. We reverse and dismiss Dr. Carter’s ease against USAA.

*1087
Facts

Dr. Carter suffered injury on September 30, 1991 as the result of an intersectional collision between the motorcycle he was driving and an automobile driven by defendant Richard Baham. USAA was named as a defendant in the suit resulting from the accident because Dr. Carter was insured by USAA at the time of the accident under two different policies — an automobile liability policy and an umbrella liability policy. USAA previously tendered $100,000 to Dr. Carter pursuant to the automobile liability policy. Thereafter, Dr. Carter sought UM coverage under the umbrella liability policy.
USAA denied UM liability under the umbrella policy, saying that Dr. Carter rejected UM coverage on that policy both in 1985, when the policy was initially issued, and in 1991, when he signed a form sent to him by a USAA assistant manager. Dr. Carter admits that he validly rejected UM coverage by his signature on the appropriate form when the policy was issued in 1985. However, he claims that he was not properly informed of his right to ^select UM insurance in an amount lower than the limits of the umbrella liability policy when he signed the UM rejection form in 1991. Thus, Dr. Carter claims, his rejection of UM was invalid and he is therefore entitled under Louisiana law and jurisprudence to UM coverage in the amount of the umbrella liability policy.
Athough USAA had requested a jury trial in this case, the parties agreed to bifurcate the trial and to allow the trial judge to decide the legal question of UM liability under the terms of the policy prior to going before a jury on the damage issue. The liability issue was submitted to the trial judge on the basis of depositions from employees of USAA and an affidavit from Dr. Carter, as well as memorandums from counsel for both parties. After considering the arguments made and the evidence presented, the trial court found that USAA was liable to provide UM coverage to Dr. Carter. In his reasons for judgment, the trial judge stated as follows:
The Court is of the opinion that when USAA took the affirmative step of providing its insured with a new uninsured motorist (UM) waiver form for the policy period 6/91 to 6/92, that waiver form had to-comply with the law by fully aprising [sic] the insured of his options with regard to UM coverage. USAA has failed to satisfy its burden of proving that the plaintiff rejected UM coverage on a form which apprised him of all of his options.

Continuing validity of original rejection

In appealing the trial court judgment in favor of Dr. Carter, USAA primarily attacks the first sentence of the trial court’s reasons for judgment, arguing that Dr. Carter’s initial 1985 admittedly-valid rejection of UM coverage continues to be valid. In support of this proposition, USAA claims that an initial formal UM rejection becomes part of the insurance policy, relieving the insurer of the obligation to inform the insured of all available options when the policy is later renewed. See Tugwell v. State Farm Insurance Co., 609 So.2d 195 (La.1992).
Athough that proposition is generally true, USAA cites no cases with the unique factual circumstances of the instant case, where the insurer took an affirmative action allowing the insurer an opportunity to reject UM coverage at some point subsequent to the | {¡initial rejection, despite the fact it was not required to take such an action.[1] The trial court found that when an insurer chooses to take such an affirmative action, a valid subsequent rejection must meet all the requirements for a valid initial rejection.
This is apparently an issue of first impres-, sion in Louisiana courts. However, because we disagree with the trial judge’s second conclusion — that USAA failed to prove that the rejection form it sent to Dr. Carter in 1991 did comport with all the requirements for an initial valid rejection — we pretermit any decision on whether the trial court correctly found that a second rejection must meet all the requirements of an initial rejection.

*1088
Requirements for valid rejection

The pertinent requirements for rejection of UM coverage in liability policies were explained by the Louisiana Supreme Court in Tugwell, 609 So.2d 195, as follows:
At all times relevant to this case, La. Rev.Stat. § 22:1406(D)(l)(a) required uninsured motorist (UM) coverage “in not less than the limits of bodily injury liability provided by the policy.” However, such UM coverage was not required “where any insured named in the policy [rejected] in writing the coverage or selected] lower limits.” The statute did not specify how a rejection or selection of lower limits was to be effected. This court has held a valid rejection or selection of lower limits must be in writing and signed by the named insured or his legal representative. Further, the insurer must place the insured in a position to make an informed rejection of UM coverage. In other words, the form used by the insurance company must give the applicant the opportunity to make a “meaningful selection” from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage.
Id. at 196-97. (Citations omitted).
A copy of the form signed by Dr. Carter in 1985 for his initial rejection of UM — which he admits was a valid rejection — is included in the record of this case as Exhibit 9 to USAA’s memorandum of law submitted to the trial court. The top portion[2] of the form allowed Dr. | ¿Carter to place a check beside one of the following pertinent options: (1) I reject UM coverage on my Umbrella Policy — sign Rejection Form below; (2) I request UM coverage equal to my Umbrella Policy limit; and (3) I request UM coverage lower than my Umbrella Policy limit.[3] Dr. Carter placed a check beside the first line and signed the top portion of the form on June 19, 1985. The following statement appeared in bold type in all capital letters at the bottom of the top portion of the form: YOU CAN REJECT THIS UM COVERAGE AND AVOID THESE ADDITIONAL COSTS BY COMPLETING AND RETURNING THE REJECTION FORM BELOW. Just below this statement was a perforation; underneath the perforation was the following form:
UMBRELLA UM REJECTION FORM
I, the named insured in the policy, reject the Uninsured Motorists Coverage on my Umbrella Policy. I understand this does not affect the Uninsured Motorists Coverage on my automobile policy.
Dr. Carter checked the box beside the above statement and signed the form on June 19, 1985. At the very bottom of the form, the following statement appears in bold type in all capital letters: FAILURE TO RETURN THIS FORM WILL RESULT IN UM COVERAGE BEING INCLUDED IN YOUR POLICY AND YOUR BEING CHARGED ACCORDINGLY.
Also in the record, marked as Exhibit 2 to USAA’s memorandum of law, is a copy of an “Umbrella UM Rejection Form” signed by Dr. Carter on May 23,1991. That document is a virtually identical to the bottom portion of the form described above — the portion of the 1985 document which was found below the perforation.
Three employees of USAA’s Tampa, Florida office — from which the UM rejection form was sent to Dr. Carter in 1991 — testified by deposition. Sheila Price, the USAA assistant manager whose name appears as the signa-tary on the March 3, 1991 letter which accompanied the form, stated that she designated enclosure of the entire UM rejection form, not just the bottom portion below the perforation. That testimony was corroborated by Kevin Storey, USAA’s operations support supervisor, who testified concerning the *1089 procedures for sending out letters with attachments, indicating that the entire form designated Isby the person writing the letter would have been sent to the insured party along with the letter. Catherine Wingert, an underwriting manager for USAA, admitted that only the bottom portion of the form was received from Dr. Carter in 1991, but said that it was not unusual for an insured party who wished to reject UM coverage to send only the bottom portion of the form.
Dr. Carter stated, however, by affidavit as follows:
that he signed the original form identified by the parties as “Joint Exhibit 2,” rejection of uninsured motorist coverage for USAA umbrella liability policy no. 160 84 82 70U after receiving said form in the mail from USAA; that he received no other form from USAA pertaining to uninsured motorist coverage under said policy prior to the time that the policy was issued; that he signed the rejection form because no other options were presented and he believed, based upon the letter he received from USAA (“Joint Exhibit 4”) that he was required to do so under Louisiana law.
The trial court found that the above deposition testimony offered by USAA was insufficient to prove the form signed by Dr. Carter rejecting UM coverage “apprised him of all of his options” — i.e. that USAA failed to prove that the form had informed Dr. Carter of his option to select lower UM coverage than the limit of his umbrella policy. This finding was apparently premised on a finding that USAA failed to prove that the top portion of the form, as described above, was sent to Dr. Carter at the time the bottom portion of the form was sent.
We disagree. The USAA employees testified unanimously that only a complete form would be sent to an insured under the procedures and practices of the USAA office at the time the form was forwarded to Dr. Carter for consideration. Further, we note that Dr. Carter would not have UM insurance coverage under the policy if USAA had done nothing, since he unquestionably validly rejected UM when he obtained the policy. In essence, Dr. Carter rejected UM twice, when the law would have recognized his initial rejection as prohibiting recovery under the facts of this ease. Thus, USAA met its burden of proof on this issue.

16Conclusion

Accordingly, the trial court judgment against defendant USAA and against plaintiff Don E. Carter M.D. is reversed. Dr. Carter’s suit against USAA is hereby dismissed.

REVERSED AND DISMISSED.

ULANDRIEU, J., concurs in the result.

. USAA claims that it was under the mistaken impression at the time the form allowing Dr. Carter to reject UM coverage was mailed in 1991 that it was required to allow insured parties an opportunity to reject UM coverage every time the policy came up for renewal.

. The top portion of the form also allowed the insured party to select one of three acknowledgments concerning an increase in the insured's automobile liability insurance policy with USAA; however, that section of the form is not pertinent to the issues presented by the instant case and therefore is not quoted here.

. A line beneath the third option allowed the insured party to request a specific amount of UM coverage of at least $1,000,000 in $1,000,000 increments.