650 So.2d 344 (1995)
Pamela S. ESPONGE and Nickie Esponge
v.
CITY OF NEW ORLEANS, New Orleans Police Department; Albert P. Miller; Automotive Casualty Insurance Company.
No. 94-CA-1732.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 1995.
Rehearing Denied March 14, 1995.
*345 Corey J. Orgeron, Cut Off, for plaintiff/appellant.
Veronica E. Henry and David Belfield III, New Orleans, for defendant/appellee.
Before BYRNES, ARMSTRONG and JONES, JJ.
ARMSTRONG, Judge.
Plaintiffs, Pamela Esponge and Nickie Esponge, husband and wife, appeal the trial court's granting of a motion for summary judgment in favor of defendant, the Louisiana Insurance Guaranty Association ("LIGA"). For the following reasons we now reverse.
The dispositive issue on appeal is whether Mr. Esponge effected a valid rejection of uninsured motorist (UM) coverage in his application for automobile insurance with Automotive Casualty Insurance Association ("Automotive Casualty").
On or about January 7, 1991, Mrs. Esponge was allegedly injured when the car in which she was riding as a guest passenger was struck by a New Orleans Police Department (NOPD) vehicle, driven by Officer Albert P. Miller, which allegedly ran a stoplight. At the time of the accident, Mrs. Esponge was insured under Mr. Esponge's automobile insurance policy with Automotive Casualty. The Esponges filed suit on January 7, 1992, naming as defendants Officer Miller, NOPD, the City of New Orleans, and Automotive Casualty.
Automotive Casualty filed a motion for summary judgment on January 27, 1992, arguing that it did not provide UM coverage under Mr. Esponge's policy at the time of the accident. In support of its motion, Automotive Casualty filed a copy of Mr. Esponge's December 18, 1990 application for insurance, which showed that Mr. Esponge signed a provision rejecting UM coverage. Automotive Casualty also filed the affidavit of company representative Gerald R. Pattison which stated that on December 18, 1990, Mr. Esponge rejected UM coverage.
The Esponges filed an opposition to summary judgment, asserting that the signature purportedly rejecting UM coverage was not made by Mr. Esponge. In support of their opposition, the Esponges filed affidavits in which they stated that the signature which appeared on the rejection was not made by Mr. or Mrs. Esponge.
Automotive Casualty filed a second motion for summary judgment on May 22, 1992, asserting that Mr. Esponge rejected UM coverage on June 18, 1990, in his original application for insurance. Automotive Casualty argued that because UM coverage was rejected by Mr. Esponge on June 18, 1990, the December 1990 renewal policy did not have to provide UM coverage, nor an opportunity to reject such coverage. In support of its motion, Automotive Casualty filed a copy of Mr. Esponge's June 18, 1990 application in which he purportedly rejected UM coverage. Automotive Casualty also filed a second affidavit from Pattison, in which Pattison stated that Mr. Esponge signed the rejection of UM coverage on June 18, 1990, and did not indicate that he wanted to withdraw the rejection in his renewal application of December 18, 1990.
Plaintiffs filed an opposition to Automotive Casualty's second motion for summary judgment, asserting once again that the December 18, 1990 signature was a forgery, and additionally asserting that they were not insured by Automotive Casualty prior to December 18, 1990. In support of their opposition, the Esponges filed copies of the same affidavits which they had previously filed in their opposition to Automotive Casualty's first motion for summary judgment.
At some point unclear from the record, Automotive Casualty became insolvent. LIGA, as Automotive Casualty's successor in interest, was substituted as a defendant in place of Automotive Casualty. Automotive Casualty/LIGA's motion for summary judgment was granted on June 3, 1994.
*346 Plaintiffs did not raise in the trial court, nor do they raise in this court, the specific argument that, assuming Mr. Esponge did sign what purportedly was a rejection of UM coverage, it was, nevertheless, not a valid rejection as contemplated by La. 22:1406(D)(1)(a) and Louisiana jurisprudence interpreting that statute. However, La. C.C.P. art. 2164 mandates that an appellate court "shall render any judgment which is just, legal, and proper upon the record on appeal." The Official Revision Comment to C.C.P. art. 2164 states that the purpose of the article is:
[T]o give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below.
The object of La.R.S. 22:1406(D)(1)(a) is to promote full recovery for innocent accident victims by making UM coverage available for their benefit. Hoefly v. Government Employees Insurance Co., 418 So.2d 575 (La. 1982). Based on the facts alleged in her petition, Mrs. Esponge is just such an innocent victim. We will address the issue of whether there was a valid rejection of UM coverage by Mr. Esponge.
Both the June 18, 1990 application and the December 18, 1990 renewal application contain identical language relative to the insured's rejection of UM coverage. The applications provided, in pertinent part:
UNINSURED MOTORISTS PROTECTIONCOVERAGE SELECTION Louisiana law requires that all automobile liability policies issued or delivered in this state shall afford Uninsured Motorist Coverage unless the insured shall reject such coverage.
I hereby REJECT Uninsured Motorists Bodily Injury coverage.
Signature of Applicant: __________
The affidavit of Gerald Pattison, an Automotive Casualty manager, simply stated that Mr. Esponge rejected UM coverage as evidenced by the December 18, 1990 application.
Now and at the time Mr. Esponge purchased and renewed the insurance policy at issue in the instant case, La.R.S. 22:1406(D)(1)(a) required that UM coverage, equal to the limits of bodily injury liability coverage, be included in all automobile insurance policies delivered or issued for delivery in this state unless the named insured rejected such UM coverage in writing or selected UM coverage in limits lower than bodily injury coverage limits. A valid rejection or selection of lower limits must be in writing and signed by the named insured. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La. 1992); Henson v. Safeco Insurance Companies, 585 So.2d 534 (La.1991). The insurer has the burden of proving that the named insured(s) rejected in writing UM coverage equal to bodily injury liability limits or selected lower limits. Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987)
The insurer has a duty to place the insured in a position to make an informed rejection of UM coverage. Henson, 585 So.2d at 539. "Implicit in [La.R.S. 22:1406(D)(1)(a)'s] requirement that the insurer make available to the insured the option of selecting lower limits is the idea that the insured be made aware of that option." Tugwell, 609 So.2d at 199. In Aramburo v. Travelers Insurance Co., 426 So.2d 260 (La. 4th Cir.1983), writs denied, 433 So.2d 161 (La.1983), this court found a rejection of UM coverage invalid where the application offered only UM coverage equal to or in excess of bodily injury liability limits. The application was, as in the instant case, the only evidence of the choices afforded the insured. Because the application did not afford the applicant the option of selecting lower limits of UM coverage, it was held that the insurer failed to meet its burden of proving that the insured rejected UM coverage in an amount "not less than the bodily injury liability limits" or "select[ed] lower limits," as contemplated by La.R.S. 22:1406(D)(1)(a).
In Tugwell, supra, as in the instant case, the application form presented to the insured only provided a space for the insured to reject UM coverage completely. Accordingly, the Louisiana Supreme Court held that the application form "fail[ed] to meet the requirements of the statute." 609 So.2d at 198. In accord, Robinson v. Moore, 580 *347 So.2d 1109 (La.App. 4th Cir.1991), writs denied, 586 So.2d 557, 558 (La.1991).
Because the record is devoid of any indication that Mr. Esponge was afforded the opportunity of selecting UM coverage in limits lower than the limits of bodily injury liability, defendant LIGA failed to meet its burden of establishing that there was a valid rejection of UM coverage.[1]
Accordingly, the trial court erred in granting defendant LIGA's motion for summary judgment.
For the foregoing reasons, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] Where a purported rejection of UM coverage is found to be invalid, "the policy coverage for UM must be reformed by operation of law to make it equal to the amount stated for bodily injury coverage." Robinson v. Moore, 580 So.2d 1109 (La. App. 4th Cir.1991), writs denied, 586 So.2d 557, 558 (La.1991).