668 So.2d 1202 (1996)
Phyllis HERMAN, wife of/and Maury A. Herman
v.
James K. ROME, Triple A Taxi Rentals, Inc., Automotive Casualty Insurance Company, State Farm Mutual Automobile Insurance Company and Louisiana Insurance Guaranty Association.
Nos. 95-CA-666, 95-C-831.
Court of Appeal of Louisiana, Fifth Circuit.
January 17, 1996.
*1203 James R. Carter, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for Defendant/Appellant, St. Farm Mutual Automobile Ins. Co.
Joseph Maselli, Jr., Plauche, Maselli & Landry, New Orleans, for Defendant/Appellee, Motors Insurance Company.
T. Daniel Pick, Herman, Herman, Katz & Cotlar, New Orleans, for Plaintiffs/Appellees, Phyllis Herman w/o and Maury A. Herman.
Ronald Bodenheimer, Gretna, for Defendants/Appellees, Liga, Triple A Taxi Rental and James K. Rome.
Before WICKER and CANNELLA JJ., and REMY CHIASSON, Pro Tempore.
*1204 REMY CHIASSON, Judge, Pro Tempore.
State Farm Mutual Automobile Insurance Co., hereinafter State Farm, appeals[1] the Trial Court's grant of summary judgment in favor of Motors Insurance Company, hereinafter MIC, finding MIC's insured, Benson Leasing, hereinafter Benson, made a valid selection of $20,000.00 in uninsured motorist coverage. The liability limit under the MIC policy issued to Benson is $1,000,000.00. For the following reasons, we vacate the grant of summary judgment in favor of MIC, vacate the denial of summary judgment against State Farm and hold that the MIC policy issued to Benson contains a UM policy limit equal to the policy's liability limits.
Plaintiff, Maury Herman, brought suit to recover damages for injuries he received as a result of a car accident. The Tortfeasor's liability insurer went bankrupt leaving the Louisiana Insurance Guaranty Association (LIGA) responsible for claims against it. Under the LIGA statutes, Herman's insurance and the insurance of the vehicle owner become primary over LIGA. State Farm provided insurance to Herman. MIC provided insurance to Benson, the vehicle owner.
MIC contends Benson validly selected the lower limit of $20,000.00 uninsured motorist coverage. State Farm contends the selection of lower limits was not valid for the following reasons:
1. The form was not designed by the insurer;
2. There is no policy number on the alleged selection;
3. The selection form was not attached to the policy;
4. The form does not clearly provide the mandated three options of same limits, lower limits or rejection;
5. The alleged selection form conflicts with other provisions of the policy concerning U/M; and
6. The selection was not contained in a single document.
Appellate courts review summary judgments de novo under the same criteria that govern the trial judge's consideration of whether a summary judgment is appropriate. Thus, we give no deference to the trial court's decision. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991).
As set forth in La.Code Civ.P. art. 966(A), a plaintiff or a defendant in the principal or any incidental action, with or without supporting affidavits, may move for summary judgment in his favor for all or part of the relief which has been sought. Further, the mover is entitled to judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with supporting affidavits, if any, show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B); Durrosseau v. Century 21 Flavin Realty, Inc., 594 So.2d 1036 (La.App. 3d Cir.1992).
Because the burden of establishing that no material factual issue exists is on the mover, inferences to be drawn from the underlying facts contained in the record must be viewed in the light most favorable to the party opposing the motion. Schroeder, supra. If the supporting documents presented by the mover are not sufficient to resolve all material fact issues, summary judgment must be denied. Durrosseau, supra. Only if the supporting documents of the mover are sufficient does that burden shift to the opposing party to present evidence that material facts are still at issue. At this point, the opposing party may no longer rest on the allegations and denials contained in his pleadings and must present evidence of a material fact issue. Id. Any doubt is resolved against the granting of the summary judgment and in favor of a trial on the merits to resolve disputed facts. Chaisson v. Domingue, 372 So.2d 1225 (La.1979). Summary judgment is seldom appropriate when there is a question relating to subjective facts such as intent, knowledge, motive, malice or good *1205 faith. Durrosseau, supra; Penalber v. Blount, 550 So.2d 577 (La.1989).
LSA RS 22:1406 governs the issuance of uninsured motorist coverage in Louisiana. Section 1406 provides, in pertinent part as follows:
LA R.S. 22:1406, Specific duties of casualty and surety division; uninsured motorist coverage; temporary substitute vehicles and rental vehicles
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subsection unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. The coverage provided under this Subsection may exclude coverage for punitive or exemplary damages by the terms of the policy or contract.
(ii) After September 1, 1987, such rejection or selection of lower limits shall be made only on a form designed by each insurer. The form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.
(iii) This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state.
. . . . .
(c)(i) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:
(ii) With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, the following priorities of recovery under uninsured motorist coverage shall apply:
(aa) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(bb) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over *1206 and above the primary coverage available to the injured occupant.
The clear purpose of the statute is to promote the recovery of damages for innocent victims of automobile accidents when the tortfeasor is either uninsured or underinsured. This purpose is accomplished by making UM coverage available for the victim's benefit as primary protection against the tortfeasor not adequately insured. Uhrich v. National Fire Ins. Co., 569 So.2d 1062 (La.App. 3d Cir.1990), writ denied, 572 So.2d 96 (1991). The statute is to be liberally construed, such that statutory exceptions to the UM coverage requirements are interpreted strictly. Tugwell v. State Farm Insurance Co., 609 So.2d 195 (La.1992). The burden of proving that any named insured rejected, in writing, UM coverage equal to the bodily injury liability limits or selected lower limits is on the insurer. Id.
In Tugwell v. State Farm, 609 So.2d 195, 197 (La.1992), the Supreme Court outlined the requirements for a valid rejection of UM coverage, stating:
The insurer must place the insured in a position to make an informed rejection of UM coverage. In other words, the form used by the insurance company must give the applicant the opportunity to make a "meaningful selection" from his options provided by [LSA-R.S. 22:1406(D)]: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage. (Citations omitted.
See also Carter v. Baham, 649 So.2d 967 (La.1995).
In the present case, the UM rejection form signed by the authorized Benson representative states the "policy will provide uninsured/underinsured coverage at a limit equal to the policy's liability limit. You may reject coverage or select a lower limit by completing the proper selection space below." The form then allowed the applicant to select UM coverage at a limit "lower than my policy limit for liability" or "reject all" UM coverage. The form executed by Benson selected lower UM limits in the amount of $20,000.00 bodily injury and $10,000.00 property damage.
State Farm argues this language is not sufficient under Tugwell because the applicant was not clearly offered the three options of same UM coverage as liability limits, lower limits and rejection. In support, State Farm cites the cases of Anderson v. Allstate Ins. Co., 642 So.2d 208 (La.App. 1st Cir.1994) and Holbrook v. Holliday, 640 So.2d 804 (La.App. 3d Cir.1994).
The forms at issue in both Anderson and Holbrook acknowledged the right of the applicant "to be provided with" UM coverage at the same limits as liability limits then allowed the applicant to select a lower limit or reject UM coverage. The courts found the forms to be ambiguous because they could be construed as providing the applicant with only the options of UM limits lower than the liability limit or rejection of UM coverage; thus not meeting the requirements of the statute or Tugwell.
We find the form at issue here similarly ambiguous. As in Anderson and Holbrook, the form herein stated the policy will provide UM coverage at a limit equal to the policy's liability limit then provided only two options for the applicant to choose, lower UM limits or rejection of UM. However, the form does not state the failure of the applicant to reject UM coverage or select UM limits lower than that provided for bodily injury would result in UM coverage being provided at the bodily injury limits. Accordingly, we find the language of the form at issue does not clearly and unambiguously provide the applicant with the opportunity to make a meaningful selection of the required three options. Thus, the form is invalid on its face.
Accordingly, we find the trial court erred in granting MIC's motion for summary judgment. Because of our decision concerning the validity of the form itself, we do not reach State Farm's other alleged errors.

DECREE
For the foregoing reasons, we vacate the trial court's grant of summary judgment in favor of MIC. Further, for the reasons above stated, State Farm's application for *1207 supervisory writs, 95-C-831, is granted. Because the UM rejection form is invalid on its face, we hold the MIC policy issued to Benson Leasing provides uninsured/underinsured coverage policy limits equal to the policy's liability limits.
SUMMARY JUDGMENTS VACATED; WRIT GRANTED AND JUDGMENT RENDERED.
NOTES
[1] State Farm also applied to this court for a writ of review of the trial court's denial of their motion for summary judgment on the same issue. The writ, 95-CA-831, was referred to the merits of this appeal.