J2GOTHARD, Judge.
Plaintiff, Mitchell Russo, appeals a summary judgment rendered in favor of defendant, Allstate Insurance Company. For the following reasons, we affirm.

FACTS/PROCEDURAL HISTORY

On September 26, 1990, Mitchell Russo (“Russo”) was involved in a car accident with Lisa Ervin (“Ervin”). The car driven by Russo was owned by Donna Taylor (“Taylor”). The car driven by Ervin was owned by Herbert Reed (“Reed”). On May 10, 1991, Russo brought suit in the 24th Judicial District Court for the Parish of Jefferson for the damages he suffered in the accident. Named as defendants were Ervin, Reed, and Reed’s liability insurer, Colonial Lloyds Insurance Company.
^Subsequently, Russo amended his petition to add as defendants Allstate Insurance Company (“Allstate”) and State Farm Mutual Automobile Insurance Company (“State Farm”). Allstate’s liability was premised on its status as the uninsured/underinsured motorist (“UM”) Carrier under a $10,000 per person/$20,000 per occurrence policy issued to Taylor. State Farm, on the other hand, was Russo’s personal UM carrier. Eventually, Russo added the Louisiana Insurance Guaranty Association (“LIGA”) as a defendant based upon the bankruptcy of Colonial Lloyds Insurance Company.
Allstate moved for summary judgment, contending that Taylor had executed a valid waiver of UM coverage. The waiver signed by Taylor stated as follows: “Uninsured Motorists Insurance (Coverage SS), which includes underinsured motorists insurance, and the available limits have been explained and offered to me. I understand the offer and....” The form then set out three boxes which gave Taylor the opportunity to: (1) select UM coverage equal to the bodily injury limits in the policy; (2) reject UM coverage for bodily injury; or (3) select optional UM coverage for property damage. Taylor checked the box rejecting UM coverage for bodily injury and signed her name. Based on this waiver, Allstate, which had been sued only in its capacity as Taylor’s UM carrier, argued that it should be dismissed from the suit because her policy did not include UM coverage. Both State Farm and Russo opposed Allstate’s motion. On October 10, 1995, the trial court granted Allstate’s motion for summary judgment, thereby dismissing the insurer from the suit. From this judgment, Russo has appealed.

LAW

Appellate courts review the granting of summary judgment de novo, using the same criteria which governs the trial court’s decision as to whether summary | ¿judgment is appropriate in a given case. Schroeder v. Bd. of Supervisors, 591 So.2d 342, 345 (La. 1991). Pursuant to La.C.C.P. art. 966, a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. Because the mover has the burden of establishing that there is no issue of material fact, inferences to be drawn from the underlying facts in the record must be viewed in the light most favorable to the party opposing the motion. Schroeder, supra. Whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute which can properly be resolved within the framework of a motion for summary judgment. Garcia v. Certified Lloyds Ins. Co., 598 So.2d 1278, 1280 (La.App. 4th Cir.), writ denied, 604 So.2d 969 (La.1992).
In Louisiana, UM coverage is provided for by statute and embodies a strong public policy. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987). The object of the statute is to promote full recovery for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is *1233 without insurance, and as additional or excess coverage when he is inadequately insured. Id. In furtherance of the policy underlying UM coverage, the statute is to be liberally construed and any exceptions to the coverage requirement are interpreted strictly. Id.
La.R.S. 22:1406(D)(l)(a)(i) is the law which governs the issuance of UM coverage in Louisiana. In pertinent part, the statute provides:
No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subsection unless coverage is provided therein or supplemental thereto, in not less than |sthe limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits.
To summarize, the statute provides that an insured is afforded UM coverage equal to the liability limits of his policy as a matter of law, unless he rejects the coverage in writing or selects lower limits.
The leading case on the requirements for a valid rejection of UM coverage is Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). In Tugwell, the Louisiana Supreme Court stated that the insurer must place the insured in a position to make an informed rejection of UM coverage. Id. at 197. Thus, in order to be valid, a waiver form must “give the applicant the opportunity to make a ‘meaningful selection’ from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage.” Id.
Cases subsequent to Tugwell have dropped the requirement that the waiver form include the option of selecting UM coverage with lower bodily injury limits than the policy when the policy provides the minimum limits allowed by law. See West v. Louisiana Indem. Co., 26,845 (La.App. 2d Cir. 4/5/95), 653 So.2d 194, writ denied, 95-1099 (La. 6/16/95), 655 So.2d 337; Morgan v. Sanchez, 94-0090 (La.App. 1st Cir. 4/15/94), 635 So.2d 786. The rationale underlying these decisions is that, pursuant to La.R.S. 22:1406(D)(l)(a)(i) and La.R.S. 32:900(B)(2), the limits of a UM policy may not be less than $10,000 per person/$20,000 per occurrence. Id. Thus, when the policy in question provides thejjminimum limits allowed by law, there is no reason to give an insured the option of selecting UM coverage with lower limits than the policy because the insurer is precluded from issuing such coverage. Id.

ANALYSIS

The only issue before us is whether Taylor’s rejection of UM coverage in the Allstate policy is valid. The relevant portion of the waiver executed by Taylor only offered options of selecting UM coverage equal to the bodily injury limits of her policy or rejecting UM coverage. Thus, the form failed to give Taylor the option of selecting UM coverage with lower bodily injury limits than the policy. Based on this omission, Russo argues that the form is invalid as a matter of law pursuant to Tugwell, supra, because it does not list the three options mandated by the UM statute.
We find Tugwell to be distinguishable from the facts presented here. In Tugwell the liability limit of the policy in question was $1 million. 609 So.2d at 196. Thus, it was possible for the insured to select UM coverage with lower limits than those of the policy. Here, Taylor’s policy had a limit of $10,000 per person/$20,000 per occurrence. Again, pursuant to La.R.S. 22:1406(D)(l)(a)(i) and La.R.S. 32:900(B)(2), UM coverage may not be provided with lower limits than $10,000 per person/$20,000 per occurrence. Therefore, even if Taylor had wanted to, she could *1234 not have selected UM coverage with lower limits than her policy.
The underlying principle of the Tugwell decision is that an insured cannot make an informed waiver of UM coverage without being aware of all of his options. However, when an insured cannot legally choose UM coverage with lower limits than in his policy, it makes no sense to require the insurer to offer such an option. |7In fact, requiring an insurer to insert an option in a waiver form that the insured cannot choose is likely to lead to confusion, rather than an “informed” decision by the insured. Accordingly, we agree with the West and Morgan decisions, supra, and hold that a waiver does not have to list the option of UM coverage with lower bodily injury limits than in the policy when the policy provides the statutory minimum liability limits. Therefore, we conclude that the waiver executed by Taylor is not invalid as a matter of law.
Russo further argues that the waiver form is invalid because it is part of the insurance policy rather than a separate document. We reject this contention. Russo bases his argument on the fact that the UM statute states that a “rejection or selection of lower limits shall be made only on a form designed by each insurer.” La.R.S. 22:1406(D)(l)(a)(ii) (emphasis added). While the statute refers to a form, it does not say that the form may not be physically incorporated into the insurance policy or that the form must be on a separate document. Thus, the statute does not support Russo’s argument. Moreover, the important question in this case is whether Taylor made an informed decision in rejecting the UM coverage. The location of the waiver, by itself, is not determinative of this question. In sum, we conclude that the fact that the waiver was a part of the insurance policy rather than a separate document does not render it invalid.
Additionally, Russo argues that the waiver is invalid because it is in small print and is cramped on the application form. We disagree. The UM waiver section is a separate part of the insurance policy. Moreover, the print used in the waiver is the same size as the print used in the rest of the policy, except for the headings or boldfaced print.
| ¿Finally, Russo argues that the waiver is invalid because the language contained in it is misleading or ambiguous. The language complained of in the waiver executed by Taylor states that UM coverage and the available limits have been “explained and offered to me.” Russo equates the foregoing language with the phrase “to be provided with”, which has been found sufficiently ambiguous in two recent cases as to render waivers of UM coverage invalid. See Holbrook v. Holliday, 93-1639 (La.App. 3d Cir. 6/1/94), 640 So.2d 804, 808, writ denied, 94-1735 (La. 10/7/94), 644 So.2d 642; Anderson v. Allstate Ins. Co., 93-1102 (La.App. 1st Cir. 8/25/94), 642 So.2d 208, 215, writ denied, 94-2400 (La. 11/29/94), 646 So.2d 404.
In both Holbrook and Anderson, the forms in question acknowledged the right of the applicant “to be provided with” UM coverage at the same limits as the policy liability limits. The forms then allowed the applicant to choose between selecting a lower limit or rejecting UM coverage. The courts found the forms ambiguous because they could be construed as providing the applicant with only the options of selecting UM coverage with lower limits than the policy or rejecting UM coverage. That is, the insured was not given the option of selecting UM coverage with the same limits as the policy, although the language of the waiver acknowledged that the insured had this right.
In the instant case, we find that the language of the waiver is not ambiguous. The waiver states that UM coverage and the applicable limits were explained to Taylor. She then was given the option of either selecting UM coverage at the policy limits or rejecting UM coverage. Again, Taylor could not have selected UM coverage at lower limits than the policy provided; thus, there was no need to list this as an option. In short, Taylor was informed of all the options provided her by theJgUM statute. Thus, we conclude that she was able to make a “meaningful selec *1235 tion” as required by Tugwell, supra. Accordingly, we hold that the waiver executed by Taylor is valid under Louisiana law.
Based on the foregoing, the judgment appealed from is affirmed.
AFFIRMED.