JOAN BERNARD ARMSTRONG, Chief Judge.
| T Defendants/appellants, Larry Jones, Gulf States Intermodal, Inc. (“Gulf States”), Boasso America Corp. (“Boasso”), TIG Insurance Company (“TIG”), Reliance National Indemnity Co. (In Receivership) (“Reliance”), and the Louisiana Insurance Guaranty Association (“LIGA”), appeal the May 8, 2006, granting of a summary judgment in favor of Lumbermens Mutual Insurance Company (“Lumbermens”) finding that the commercial automobile policy issued by Lumbermens to Burger King Corporation (“Burger King”) did not provide uninsured motorist coverage for an accident in which the plaintiff, Gene Franques, was injured while riding as a passenger in a vehicle owned and driven by Victor Hogan.[1]
*1255 The appellants claim that the Lumber-mens policy provides uninsured motorist coverage for the accident. At the time of the accident, Franques was employed by Burger King and in connection with that employment he was training | aemployees of a Burger King franchise owned by RST Investments (“RST”) and was taking part in a training session with Victor Hogan, an employee of RST. At the time of the accident, plaintiff was a guest passenger. in Hogan’s vehicle for the purpose of traveling from one RST Franchise to another for training sessions. It is undisputed that the plaintiff, Franques, was in the course and scope of his employment with Burger King at the time of the accident.
The accident occurred when the Hogan vehicle collided with a truck driven by Larry Jones while in the course and scope of Jones’ employment with Gulf States. Gulf states is owned by Boasso. Reliance was the liability insurer for Gulf States and Boasso and by extension, Larry Jones. TIG is the . excess insurer for Gulf States/Boasso and by extension, Jones. Hogan’s vehicle in which Franques was riding as a passenger was insured by National Union. Franques had personal uninsured/underinsured coverage with State Farm Mutual Automobile Company.
The aforementioned May 8, 2006 judgment also denied cross motions for summary judgment filed by the appellants, Larry Jones, Gulf States, Boasso and LIGA. TIG filed a brief in support of the appeal of Larry Jones, Gulf States, Boasso and Reliance.[2]
Although the overarching question raised in this appeal is whether the Lum-bermens policy is required to provide UM coverage to the plaintiffs in connection with this accident, the threshold question before this Court is whether Burger King executed a valid Uninsured Motorist rejection form in connection | swith the commercial automobile policy issued by Lumber-mens to Burger King. For the reasons hereinafter set forth we find that it does.
We review summary judgments de novo. Whether an insurance policy provides or precludes coverage, as a matter of law, can be resolved within the framework of a Motion for Summary Judgment. Gautreaux v. Dufrene, 04-970 (La.App. 5 Cir. 1/11/05), 894 So.2d 385. If the rejection of UM coverage is unambiguous, but not in proper form, it is ineffective. Dibos v. Bill Watson Ford, 622 So.2d 677 (La.App. 4 Cir.1993); Moyles v. Cruz, 96-0307 (La.App. 4 Cir. 10/16/96), 682 So.2d 326, 329. The defendants take the position that the expression of the intent to reject UM coverage must meet certain formal requirements which were not met in the instant case. Dyess v. American Nat. Property and Cas. Co., 03-1971, p. 8 (La.App. 1 Cir. 6/25/04), 886 So.2d 448, 453; Richardson v. Lott, 03-0189 at p. 8 (La.App. 1 Cir. 11/7/03), 868 So.2d 64, 71. See also Cohn v. State Farm Mut. Auto. Ins. *1256 Co., 03-2820 (La.App. 1 Cir. 2/11/05), 895 So.2d 600, 602; Lee v. Naquin, 05-606 (La.App. 5 Cir. 2/3/06), 924 So.2d 250, 253.
The appellants contend that the UM rejection form is invalid because it fails to provide accurate information regarding the selection of lower limits, and in particular it fails to specifically list the lowest legally permissible amount of coverage of $10,000.00 per person as well as failing to note a $20,000 minimum per occurrence. The appellants argue that Burger Bang could not make an informed decision on rejecting coverage in the absence of this information. They base this contention on that portion of the Lumber-mens/Burger King UM rejection form which states that:
|4The available limits for Uninsured Motorist Coverage Bodily Injury Liability (including Underinsured Motorist Insurance) are as follows:
$25,000
$50,000
$100,000
$250,000
$350,000
$550,000
$1,000,000 THESE LIMITS ALSO APPLY TO HIRED AND NON-OWNED AUTOMOBILES IF APPLICABLE
However, immediately preceding this portion of the form in compliance with the statutory requirement is the statement:
As required by Louisiana law your policy has been issued with Uninsured Motorists Coverage at limits equal to your bodily injury liability limits. You may choose to select lower or higher limits.
This UM rejection form was signed by the Burger King representative and dated July 1, 1998.
Additionally, the Lumbermens policy contains “UNINSURED AND UNDER-INSURED MOTORIST COVERAGE AMENDATORY ENDORSEMENT # 4”, which provides that:
For all states, where permitted to do so, the Insured has elected to reject Uninsured and/or Underinsured Motorists Coverage. In those states where the rejection of coverage is not permitted, the lowest permissible coverage limit applies.
| ¿Kathleen Davies, the Burger King Director of Insurance and Claims at the time the UM rejection form was executed, testified in her deposition that it had always been the policy of Burger King to reject UM coverage.
Robert Roark, the current Burger King Director of Insurance and Claims testified to the same effect.
The binder which anticipated the Lum-bermens policy in question stated that:
For all states where permitted to do so, the Insured has elected to reject uninsured and/or underinsured motorists coverage.
The defendants do not dispute Lumber-mens’ contention that Burger King intended to reject UM coverage. Indeed, in the face of the evidence described above it is difficult to see any basis to argue otherwise. Instead, as we read the defendants’ arguments they are contending that the failure of the Burger King UM rejection to meet certain technical formalities is fatal to the rejection, regardless of the intentions of either Lumbermens or Burger King. Specifically, the defendants argue that because the above quoted UM rejection form does not include an option to select minimal coverage in the amount of $10,000.00, the minimum allowed by statute, then the form of the rejection is defective, citing La. R.S. 22:680.
*1257 The defendants focus on language from the Louisiana Supreme Court in Tugwell v. State Farm Ins. Co., 609 So.2d 195, 199 (La.1992) to the effect that the rejection form must be devised in such a manner as to make it, “apparent to the reasonable person that he has the option of selecting any lower limit he chooses.” The defendants contend that the Lumbermens form is defective in not providing Burger King with the option of selecting any lower limits it chooses; rather it limits Burger King to only those dollar amount specifically listed.
Lin Esteve v. U.S. Agencies Cas. Ins. Co., Inc., 01-1009, p. 8 (La.App. 1 Cir. 5/10/02), 818 So.2d 998, 1004, the Court interpreted Tugwell to mean that
Granted, it is understood that an insured cannot select an option that he does not know exists or select an option of which he is not informed. Tugwell, 609 So.2d at 199.
As applied to the instant case, the defendants contend that by presenting the limited list of dollar option lower limits in its UM rejection form, Lumbermens failed to inform Burger King of its option under the law to select $10,000.00.
Unlike in Esteve and Tugwell, the policy-holder and the insurer in the instant case are in agreement that that UM coverage was intended to be rejected. Moreover, unlike the situation in Esteve and Tugwell, in the instant case it is the tort-feasor who claims coverage under the Burger King/Lumbermens policy.
In Gautreaux v. Dufrene, 04-970 (La. App. 5 Cir. 1/11/05), 894 So.2d 385, the court found that the failure of the UM rejection form to provide for the selection of “economic-only coverage” rendered the rejection form fatally defective. LSA-R.S. 22:680 gives the requirements for a valid UM selection/rejection form. It states in pertinent part:
(l)(a)(i) No automobile liability insurance ... shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance ... the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage....
Gautreaux is distinguishable from the instant case because in Gautreaux there is no indication that the policy-holder intended to reject “economic-only coverage” or that the policy holder was even aware of such an option. Moreover, | ^Gautreaux placed greatest weight on the fact that La. R.S. 22:680 [3](l)(a)(ii) required the rejection or selection of lower limits, etc., “be made only on a form prescribed by the commissioner of insurance,” a requirement the rejection form failed to meet. However, this requirement was not in effect at any time relevant to the facts of the instant case:
[T]he provisions of LSA-R.S. 22:1406(D) were substantially amended by the 1997 Louisiana Act No. 1476, § 3 (Act 1476) effective September 6, 1998. [FN3 omitted.] Before the 1997 amendment, the selection/rejection choices were to be made “only on a form designed by each insured”; after the effective date of Act. 1476, those choices were to be made “only on a form prescribed by the commissioner of insurance.”
*1258 The law now makes clear that selection/rejections shall “be on a form prescribed by the commissioner.”
Gautreaux, supra, 04-970, p. 7, 894 So.2d at 389.
We fully agree with the principle expressed in these cases, but find that nothing in the facts of those cases indicates that the UM rejection form and other expressions of intent in this case are in any way insufficient. We find no cases to the contrary. The case with facts most closely resembling those of the instant case is Croker v. Reliance National Indemnity 00-0474 (La.App. 1 Cir. 5/11/01), 800 So.2d 4. Croker was decided by a divided court in another circuit. The rejection evidence is not as strong as it is in the instant case. Crocker appears to involve an individual policy-holder complaining about the rejection form. In the instant case, the policyholder is a national corporation clearly making an informed decision on a national basis to reject UM coverage completely wherever possible. The Croker case represents the outer limits of the jurisprudence on this issue and this Court |Rdeclines to extend it to the facts of this case. Based on the particular facts of this case as set forth in this opinion, we find no public policy to be served by reversing the judgment of the trial court based on the UM rejection form.
The appellants make the additional argument that Burger King cannot prove that the form was properly executed. However, we find that the deposition testimony of Kathleen Davies, Burger King’s Director of Insurance and Claims is sufficient to establish that the form was executed and sent back. She also testified that had the UM rejection form not been sent back, representatives of the insurer would have “hounded” her until she did. John Knoebel, a longtime Lumbermens employee, confirmed in his deposition testimony that there was a follow-up procedure to request UM rejection forms when they were not returned promptly. Mr. Knoebel also testified that many of the company files were destroyed in the 9/11 disaster. The appellants have not countered with any evidence tending to prove that the UM rejection form was not properly executed and returned.
For the foregoing reasons, we find the UM rejection form to be valid and properly executed. As this finding is dispositive of the entire case, it is not necessary to consider the other issues raised by the appellants. Therefore, we affirm the judgment of the trial court.
AFFIRMED.

. On June 6, 2006, the appellants filed an application for supervisory writ with this *1255 Court raising the same issues as those argued in this appeal. 2006-C-0695. On September 15, 2006, this Court issued an order consolidating that writ application with this appeal.

. The plaintiffs filed a brief adopting all of the arguments put forth by the appellants with the exception of the statements by the appellants to the effect that the plaintiffs must first exhaust their remedies against other insurers before seeking recovery from LIGA and Boas-so, and that LIGA and Boasso are entitled to a credit of $1,000,000.00, in consequence of which the plaintiffs’ claims against LIGA and Boasso should be dismissed.
The plaintiffs call to this Court’s attention the fact that they entered into a stipulation filed of record on January 25, 2005, to the effect that the appellants would be "liable for any and all injuries and/or damages sustained by” the plaintiffs arising out of the collision underlying this litigation.” No one has questioned this assertion made by the plaintiffs.

. The historical and statutory notes for LSA-R.S. 22:680, 2004 Main Volume, states that subsection D of LSA-R.S. 22:1406 was amended by Acts 2003, No. 456, §§ 1 and 2, and redesignated as LSA-R.S. 22:680 by § 3 of Acts 2003, No. 456.