800 So.2d 4 (2001)
Mable CROKER, et al.
v.
RELIANCE NATIONAL INDEMNITY COMPANY, et al.
No. 2000 CA 0474, 2000 CA 0475 and 2000 CA 0476.
Court of Appeal of Louisiana, First Circuit.
May 11, 2001.
*6 Barry A. Roach, Lake Charles, for Plaintiffs-Appellees Jimmie Carroll Croker, III and Brandi Croker.
Christopher J. Aubert, T.A., Brett M. Bollinger, Covington, for Defendant-Appellant Reliance National Indemnity Company.
Before: FOIL, FOGG and CLAIBORNE,[1] JJ.
CLAIBORNE, Judge.
This matter is before the court on appeal from a judgment denying a motion for summary judgment filed by the defendant-appellant and granting a motion for partial summary judgment filed by the plaintiff-appellee.
The primary issue for review is the validity of the rejection of uninsured/underinsured (UM) coverage by Venture Transport, Inc. (Venture), under its business auto insurance policy written by defendant-appellant, Reliance National Indemnity Company (Reliance). Another issue involves the consideration of a post-accident affidavit by Venture's chief financial officer attached to Reliance's motion. The affidavit related to that officer's intent when he executed the purported rejection of UM coverage. Concluding the rejection was invalid and the affidavit immaterial, we affirm.

*7 FACTS AND PROCEDURAL HISTORY
On December 12, 1997, a vehicle owned and driven by Jimmie Croker, Jr., but leased to Venture Transport, Inc., collided head-on with another vehicle driven by an underinsured driver, Robert T. Livaudais. Both drivers died as a result of the collision. The plaintiffs[2], Mr. Croker's surviving spouse and children, brought this lawsuit against defendants[3], Mr. Croker's employer, Venture, and the insurer of the employer, Reliance. The policy of insurance issued by Reliance to Venture provided liability coverage in the amount of $1,000,000 per accident. On March 1, 1996, Kenneth Cefalu, the chief financial officer for Venture, signed a UM coverage form and purportedly rejected UM coverage.
Plaintiffs and Reliance filed cross motions for summary judgment on the issue of UM coverage. Reliance argued entitlement to summary judgment on the basis of a valid UM coverage rejection. Plaintiffs argued they were entitled to partial summary judgment because the policy issued by Reliance had an invalid UM rejection/selection form that did not allow Venture to make an informed decision, and the policy therefore, provided UM coverage. A hearing on the motions was held on July 23, 1999, and the trial court rendered a judgment denying Reliance's motion and granting plaintiffs' motion, finding the UM rejection form to be invalid. The district court certified this partial summary judgment for Reliance to take an immediate appeal in accordance with La.Code Civ. P. art. 1915(B). For the following reasons, we affirm.

DISCUSSION

Summary JudgmentStandard of Review
The issue in this case, whether an insurance policy provides coverage as a matter of law, is one which can properly be resolved by summary judgment. La.Code Civ. P. art. 966; Orillion v. Allstate Ins. Co., 96-1131, p. 3 (La.App. 1st Cir.2/4/97), 690 So.2d 846, 847, writ denied, 97-0664 (La.4/25/97), 692 So.2d 1092. The applicable standard of review is de novo, using the same criteria used by the district court in deciding whether summary judgment should be granted. Taylor v. Rowell, 98-2865, p. 3 (La.5/18/99), 736 So.2d 812, 814; J. Ray McDermott, Inc. v. Morrison, 96-2337, p. 9 (La.App. 1st Cir.11/7/97), 705 So.2d 195, 202, writs denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 753, 754.
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B); Rambo v. Walker, 97-2371, p. 4 (La.App. 1st Cir.11/6/98), 722 So.2d 86, 88, writ denied, 98-3030 (La.1/29/99), 736 So.2d 840. Summary judgment is favored and is designed to secure the just, speedy, *8 and inexpensive determination of every action. La.Code Civ. P. art. 966(A)(2).
The initial burden of proof is on the mover to show that no genuine issue of material fact exists. La.Code Civ. P. art. 966(C)(2). However, once the mover has made a prima facie showing that the motion should be granted, if the adverse party bears the burden of proof at trial on the issue before the court, the burden shifts to him to present evidence demonstrating that material factual issues remain. La. Code Civ. P. art. 966(C)(2); J. Ray McDermott, 96-2337, p. 9, 705 So.2d at 202. Material facts are those that potentially insure or preclude recovery, affect the litigant's success, or determine the outcome of a legal dispute. Harrison v. Shipp, 98-0021, p. 6 (La.App. 1st Cir.12/28/98), 724 So.2d 864, 867. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Rambo, 97-2371, p. 4, 722 So.2d at 88.

Legal Sufficiency of UM Waiver/Rejection
In Louisiana, UM coverage is provided for in La. R.S. 22:1406. This statute embodies strong public policy and is to be liberally construed such that statutory exceptions to the UM coverage requirements are interpreted strictly. Weeden v. Landmark American Ins. Co., 99-1939, p. 4 (La.App. 1st Cir.9/22/00), 768 So.2d 248, 250; Degruise v. Houma Courier Newspaper Corporation, 94-2386, p. 8 (La.App. 1st Cir.6/23/95), 657 So.2d 580, 586, aff'd as amended, 95-1863, 95-2675 (La.11/25/96), 683 So.2d 689. The object of the UM statute is to promote recovery of damages for innocent victims by making UM coverage available for their benefit as the primary protection when the tortfeasor is without insurance and as additional or excess coverage when the tortfeasor is inadequately insured. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La. 1992); Dardar v. Prudential Property & Casualty Insurance Co., 98-1363, p. 3 (La. App. 1st Cir.6/25/99), 739 So.2d 330, 332, writ denied, 99-2196 (La.11/12/99), 750 So.2d 195.
La. R.S. 22:1406(D)(1)(a) requires that UM coverage exists in amounts not less than the limits of bodily injury liability unless an insured rejects in writing the coverage or selects lower limits. See Dardar, 98-1363, p. 3, 739 So.2d at 332. In Tugwell, 609 So.2d at 197, the Louisiana Supreme Court set forth the requirements for a valid rejection of UM coverage under Louisiana law. The insurer must place the insured in a position to make an informed rejection of UM coverage. The form used by the insurance company must give the insured the opportunity to make a "meaningful selection" from its options provided by the statute. The insured has three options regarding UM coverage: (1) UM coverage with limits equal to the policy's bodily injury limits; (2) UM coverage with limits lower than the policy's bodily injury limits; or (3) no UM coverage. Tugwell, 609 So.2d at 197; Daigle v. Authement, 95-1465, p. 2 (La.App. 1st Cir.5/31/96), 676 So.2d 650, 651, aff'd, 96-1662 (La.4/8/97), 691 So.2d 1213.
In order for a rejection of UM coverage to be valid, the insured or his authorized representative must expressly state in a single document that UM coverage is rejected as of a specific date in a particular policy issued by the insurer. Degruise, 94-2386, pp. 12-13, 657 So.2d at 588-589. The document must also show the insured was aware of his options. Tugwell, 609 So.2d at 199. In Dardar, 98-1363, p. 4, 739 So.2d at 333, this court (citing from Degruise, 94-2386, pp. 12-13, *9 657 So.2d at 588-589) explained that "[a] writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection. If rejection of UM is ambiguous, it is ineffective, regardless of the parties' intent. If the rejection is unambiguous, but not in proper form, it is also ineffective. Therefore, unless the insured's expression of his desire to reject or select lower limits of uninsured motorist coverage meets the formal requirements of law, the expression does not constitute a valid rejection." (Citations omitted.)
Exclusions from UM coverage must be clear and unmistakable. Tugwell, 609 So.2d at 197. Thus, the insurer bears the burden of proving any insured named in the policy rejected in writing UM coverage equal to the bodily injury limits contained in the policy or selected lower limits. Henson v. Safeco Insurance Companies, 585 So.2d 534, 537 (La.1991). A form used by an insurer will not meet statutory requirements if it fails to inform an insured of an available option or forecloses an available option. Daigle, 96-1662, p. 4, 691 So.2d at 1215.
The pertinent part of the UM rejection form used by Reliance is as follows:
REJECTION OF UNINSURED MOTORISTS COVERAGE OR SELECTION OF LIMIT OF LIABILITY
(Louisiana)
The Louisiana Insurance Code ... permits you ... to reject the Uninsured Motorists Coverage or to select a limit of liability lower than the limit of Bodily Injury Coverage in the policy but not less than the basic financial responsibility limit. Uninsured Motorists Coverage provides insurance for the protection of persons insured under the policy who are legally entitled to recover damages from the owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.
Under the Louisiana Insurance Code... it is required, provided bodily injury Uninsured Motorists Coverage is not rejected, that at the request of the named insured, uninsured Motorists Coverage for property damage be afforded to motor vehicle(s) without Collision Coverage. Uninsured Motorists Coverage provides property damage insurance for the protection of persons ...
In accordance with the Louisiana Insurance Code, ... the undersigned insured
. . .
(Applicable item marked [x])
[] agrees to maintain Uninsured Motorists Coverage at limits equal to the limits provided under the Bodily Injury Coverage.
[] agrees that the Uninsured Motorists Coverage afforded in the policy is hereby deleted.
[] agrees that the following limit of liability which is lower than the Bodily Injury Coverage limit, applies with respect to the Uninsured Motorists Coverage afforded in the policy:
$10,000 each person (enter limit if applicable);
$20,000 each accident.
[] agrees that Uninsured Motorists Coverage provides property damage coverage to motor vehicle(s) without Collision coverage.
I/we understand and agree that I/we personally have made the selection above with my own hand after being made aware of my choices as described above ....
Signature of Insured Signature of Insured

*10 Date Policy No. (if known)
After carefully reviewing this form, we find that the method of rejecting and/or selecting UM coverage fails to satisfy the requirements of La. R.S. 22:1406. Specifically, the form is unclear, ambiguous, and fails the "clear and unmistakable" requirement of Tugwell. The declarations page of the policy issued by Reliance states that the limits that Reliance will pay for any one accident or loss is $1,000,000. Thus, Reliance was required to inform Venture (the insured) that it could select UM coverage in an amount equal to the bodily injury limits of $1,000,000, an amount less than $1,000,000, but not less than the basic required limits, or reject UM coverage completely.
Reliance's rejection form failed to inform the insured that it could select any amount in between the bodily injury limits of $1,000,000 and the basic required limits of $10,000/$20,000. Thus, the selection option was vague and ambiguous. The option pre-selected the lowest, basic limits ($10,000/$20,000) for the insured. The form is unclear that any amount between $1,000,000 and $10,000/$20,000 could be chosen. The form is also ambiguous because in the first paragraph the insured is informed that it may "select a limit of liability lower than the limit of bodily injury coverage in the policy but not less than the basic financial responsibility limit," and then in the options section of the form the basic financial responsibility limit is preselected for the insured.
We also note that the form does not contain any written indicia that the insured's lack of a selection would result in automatic UM coverage at liability limits. The Supreme Court in Daigle, 96-1662, p. 4, 691 So.2d at 1215, declared the necessity of the insurer to advise the insured "in plain and unambiguous language that Louisiana law requires all automobile liability policies issued or delivered in the state to afford uninsured motorist coverage `unless the insured shall reject such coverage.'" Thus, the insured must be informed that if it does nothing, i.e., makes no selection/rejection, then it would automatically have UM coverage pursuant to Louisiana law. See Trahan v. Prudential Property & Casualty Ins. Co., 97-2470, p. 6 (La. App. 1st Cir.5/14/99), 739 So.2d 811, 814-815. Reliance's policy does not inform the insured of this statutorily mandated coverage, and as such, we are constrained to find the form invalid. The form does not give the insured the opportunity to make a "meaningful selection" from its options as required by Tugwell, 609 So.2d at 197-199. Therefore, absent a valid rejection, UM coverage will be read into the policy in an amount not less than the $1,000,000 limit of bodily injury liability.
In support of its motion for summary judgment, Reliance attached the affidavit of Kenneth Cefalu, the chief financial officer of Venture, for the purpose of showing that he rejected UM coverage on behalf of Venture, and at the time of the rejection he was aware of his option to select an amount of UM coverage between the bodily injury limits and the basic financial responsibility limits. Mr. Cefalu further stated in his affidavit that he understood his options and the rejection/selection form in Reliance's policy was not vague or ambiguous to him. We have previously held in Evans v. Crowe, 98-2422, p. 5 (La.App. 1st Cir.12/28/99), 765 So.2d 366, 369, writ denied, XXXX-XXXX (La.3/24/00), 758 So.2d 156, that an ex post facto affidavit executed by an insured cannot be considered in conjunction with a UM rejection/selection form. The legal viability of a UM rejection/selection form cannot be resuscitated by an insured's "after *11 the fact affidavit." Evans, 98-2422, p. 5, 765 So.2d at 369.

CONCLUSION
We find that Reliance's policy does not contain a valid rejection/selection form, and therefore, the rejection of UM coverage by Venture must fall. Plaintiffs are eligible to seek UM coverage up to the limits of the general liability policy of Reliance. The trial court's ruling granting partial summary judgment in favor of plaintiffs and denying summary judgment to Reliance is hereby affirmed. Costs associated with this appeal shall be borne by defendant-appellant, Reliance.
AFFIRMED.
FOGG, J., concurs and assigns reasons.
FOIL, J., Dissents.
FOGG, J. Concurs.
For the following reasons, I respectfully concur. Reliance National Indemnity Company makes the well-founded assertion that its insured knowingly rejected UM coverage, choosing to forego both the expense and the coverage. However, the UM rejection/selection form supplied by Reliance does not inform the insured of the statutorily mandated coverage. Therefore, we are constrained to find the form invalid and to affirm the judgment of the trial court. See Trahan v. Prudential Property & Cas. Ins. Co., 97-2470 (La. App. 1 Cir. 5/14/99), 739 So.2d 811.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] This lawsuit started as three separate actions with plaintiffs, Mable Croker (Number 85548), Jimmie Croker, III, and Brandie Croker (Number 85607), and Christina Broussard, as natural tutrix of Lance Justin Croker (Number 85561). All three lawsuits were ordered transferred and consolidated by the trial court on February 25, 1999. The cases remained consolidated for purposes of appeal.
[3] Also named as defendants were the estate of Robert T. Livaudais, the owner of the vehicle driven by Mr. Livaudais, Phyllis Andrew, and her insured, Progressive Insurance Company.