818 So.2d 998 (2002)
Gilbert ESTEVE, Husband of/and Miriam Esteve
v.
U.S. AGENCIES CASUALTY INSURANCE COMPANY, INC., Kerry James Thibodaux, State Farm Automobile Insurance Company, and Mike Bednarz.
No. 2001 CA 1009.
Court of Appeal of Louisiana, First Circuit.
May 10, 2002.
*1000 John H. Denenea, Jr., Karl Wiedemann, New Orleans, for Plaintiffs/Appellants Gilbert Esteve and Miriam Esteve.
Mauri A. Agosta, Labadieville, Of Counsel for Plaintiffs/Appellants Gilbert Esteve and Miriam Esteve.
Steven J. Pusateri, Baton Rouge, for Defendants/Appellees U.S. Agencies Casualty Insurance Company, Inc. and Kerry James Thibodaux.
Gregory J. Schwab, Houma, for Defendants/Appellees State Farm Mutual Automobile Insurance Company and Mike Bednarz.
Lloyd T. Bourgeois, Thibodaux, for Defendant-Appellee Mike Bednarz.
Before: FITZSIMMONS, DOWNING and LANIER,[1] JJ.
DOWNING, J.
Gilbert and Miriam Esteve, plaintiffs in a suit arising out of damages caused when an automobile crashed into their house, appeal the granting of a summary judgment in favor of their underinsured/uninsured (UM) motorist's insurance carrier, State Farm, and its agent, Mike Bednarz. The sole issue before this court is whether the trial court erred in concluding that there was no genuine issue of material fact in finding that Gilbert Esteve made a "meaningful selection" in choosing "economic-only" loss UM coverage. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On January 28, 1999, a vehicle driven by Kerry Thibodaux crashed through the Esteves' living room wall and caused damage to Mr. Esteve, who was sitting on the couch. Mr. Esteve eventually underwent surgery to repair his rotator cuff. The Esteves' home and vehicles are insured with State Farm and Mike Bednarz (Bednarz) is State Farm's agent. On August 18, 1998, Mr. Esteve changed the UM policy on his 1992 Dodge Dynasty from traditional UM coverage in the amount of $10,000/$20,000 to a $50,000/$100,000 "economic-only" loss policy; on December 10, 1998, he did the same on his 1989 Ford Ranger pick-up. These changes increased plaintiffs' premiums approximately $94 per year.
On January 27, 2000, the Esteves filed suit alleging tort claims against Thibodaux, his insurer, U.S. Agencies Casualty Insurance Company, Inc.,[2] and the Esteves' UM insurer, State Farm. The petition alleges that the UM rejection form failed to meet the informed rejection standard outlined in Tugwell v. State Farm Insurance Company, 609 So.2d 195 (La.1992). The petition also alleges that State Farm agent, Mike Bednarz, was negligent in failing to properly inform them that selecting "economic-only" loss coverage would essentially cause them to reject UM coverage since Bednarz knew or should have known that they were both retired and maintained adequate coverage for economic loss.[3]
*1001 On September 1, 2000, State Farm filed a motion for summary judgment stating that there were no genuine issues of fact as to Bednarz's negligence and that the UM forms did meet the informed rejection standard as outlined in Tugwell. The matter was heard on March 16, 2001. The trial court granted the motion and dismissed plaintiffs' case against those defendants. From that judgment, plaintiffs appealed.

STANDARD OF REVIEW
Appellate courts review the granting of summary judgment de novo and use the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Under LSA-C.C.P. art. 966, a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue of material fact and mover is entitled to judgment as a matter of law. Tugwell v. State Farm Insurance Co., 609 So.2d at 197. Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966 A(2).
The initial burden of proof is on the mover to show that no genuine issue of material facts exists, LSA-C.C.P. art. 966 C(2). However, once the mover has made a prima facie showing that the motion should be granted, if the adverse party bears the burden of proof at trial on the issue before the court, the burden shifts to him to present evidence demonstrating that material factual issues remain. See LSA-C.C.P. art. 966 C(2). Material facts are those that potentially ensure or preclude recovery, affect the litigant's success or determine the outcome of a legal dispute. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in the light of the substantive law applicable to the case. Croker v. Reliance National Indemnity Company, 00-0474, p. 4 (La.App. 1 Cir. 5/11/01), 800 So.2d 4, 8.

DISCUSSION

Legal Sufficiency of UM Waiver/Rejection-Selection Form
Plaintiffs allege that the District Court erred in granting defendants' motion for summary judgment as there was a genuine issue of material fact as to whether or not the Esteves intended to select "economic-only" UM coverage. The Esteves specifically allege that the trial court mistakenly ruled that Gilbert Esteve made a "meaningful selection" by selecting "economic-only" loss UM coverage and that this factual issue precludes granting a motion for summary judgment.
In Louisiana, UM coverage is provided for in LSA-R.S. 22:1406. This statute embodies strong public policy and is to be liberally construed such that statutory exceptions to the UM coverage requirements are interpreted strictly. Croker, 00-0474 at p. 4, 800 So.2d at 8.
Louisiana Revised Statute 22:1406 D(1)(a) requires that UM coverage exist in amounts not less than limits of bodily injury liability unless an insured rejects in writing the coverage or selects lower limits. Croker, 00-0474 at p. 5, 800 So.2d at 8. In Tugwell, the Louisiana Supreme Court set forth the requirements for a valid rejection of UM coverage under Louisiana law. The insurer must place the insured in a position to make an informed rejection of UM coverage. The form used by the insurance company must give the insured the opportunity to make a "meaningful selection" from its options *1002 provided by the statute. At the time Tugwell was decided the insured generally had three options regarding UM coverage: (1) UM coverage with limits equal to the policy's bodily injury limits; (2) UM coverage with limits lower than the policy's bodily injury limits; or (3) no UM coverage. Tugwell, 609 So.2d at 197. In order for a rejection or limitation of UM coverage to be valid, the insured or his authorized representative must expressly state in a single document that UM coverage is rejected or limited as of a specific date in a particular policy issued by the insurer. Croker, 00-0474 at p. 5, 800 So.2d at 8. The rejection or limitation must be expressed clearly, unambiguously and unmistakably. Daigle, 96-1662, p. 5 (La.4/8/97), 691 So.2d 1213, 1215. If the rejection is unambiguous, but not in proper form, it is ineffective. Therefore, unless the insured's expression of his desire to reject or select lower limits of UM coverage meets the formal requirements of law, the expression does not constitute a valid rejection. Croker, 00-0474 at p. 6, 800 So.2d at 9. The insurer bears the burden of proving any insured named in the policy rejected in writing UM coverage equal to the bodily injury limits contained in the policy or selected lower limits. Henson v. Safeco Insurance Companies, 585 So.2d 534, 538 (La.1991). A form does not meet statutory requirements if it fails to inform the applicant of an available option or forecloses an available option. Daigle, 96-1662 at p. 4, 691 So.2d at 1215.
The pertinent part of the UM rejection form at issue used by State Farm is as follows:
UNINSURED/UNDERINSURED MOTORIST BODILY INJURY COVERAGE FORM
Uninsured/Underinsured Motorists Bodily Injury Coverage, referred to as "UMBI" in this form, is insurance which pays persons insured by your policy who are injured in an accident caused by an owner or operator of an uninsured or underinsured motor vehicle.
By law, your policy will include UMBI Coverage at the same limits as you Bodily Injury Liability Coverage unless you request otherwise. If you wish to reject UMBI coverage, select lower limits of UMBI Coverage, or select Economic-Only UMBI Coverage, you must complete this form and return it to your insurance agent or insurance company. (Economic-Only UMBI Coverage may not be available from your insurance company. In this case, your company will have marked options 3 and 4 below as "Not available.")
UNINSURED/UNDERINSURED MOTORIST BODILY INJURY COVERAGE
You may select one of the following UMBI Coverage options (initial only one option):
1._____I select UMBI Coverage which will compensate me for my economic and non-economic losses with the same limits as my Bodily Injury Liability Coverage.
Economic losses are those which can be measured in specific monetary terms including, but not limited to, medical costs, funeral expenses, lost wages, and out of pocket expenses.
Non-economic losses are losses other than economic losses and include, but are not limited to, pain, suffering, inconvenience, and mental anguish.
2._____I select UMBI Coverage which will compensate me for my economic and non-economic losses with limits lower than my Bodily Injury Liability Coverage limits.
*1003
 $_______each person
 $_______each accident
3._____I select Economic-Only UMBI Coverage which will compensate me only for my economic losses with the same limits as my Bodily Injury Liability Coverage.
4._____I select Economic-Only UMBI Coverage which will compensate me only for my economic losses with limits lower than my Bodily Injury Liability Coverage limits.
 $_______each person
 $_______each accident
5._______I do not want UMBI Coverage. I understand that I will not be compensated through UMBI coverage for losses arising from an accident caused by an uninsured/underinsured motorist.
 $_______each person
 $_______each accident
The choice I made by my initials on this form will apply to all persons insured under my policy. My choice shall apply to the motor vehicles described in the policy and to any replacement vehicles, to all renewals of my policy, and to all reinstatement or substitute policies until I make a written request for a change in my Bodily Injury Liability Coverage or UMBI Coverage.
The Esteves selected the third option but now claim that they never intended to limit their recovery to "non-economic" loss coverage only. They claim that while being mindful of not unduly increasing premiums, they really meant to increase their UM coverage to the $50,000/$100,000 limits of the liability policies and since they did not understand the meaning of "non-economic" loss only, they did not have a "meaningful selection." The Esteves claim that by selecting this option, they essentially rejected or reduced UM coverage and since their selection was not a "meaningful one," it violates the requirements set forth in Tugwell.
After carefully reviewing the form, we find that the method of rejecting and/or selecting UM coverage satisfies the requirements of LSA-R.S. 22:1406. The UM rejection/selection document must show the insured was aware of his options. Tugwell, 609 So.2d at 199. In the instant case, the State Farm rejection/selection form is separate from the policy and provides a separate signature line. The form notifies the insured of the applicable law and provides a blank to initial next to the selection so that it is evident to anyone looking at the form that a particular option was selected. Thus, the State Farm form complies with the basic requirements set forth in Tugwell.
The main issue in this appeal, however, is whether or not Mr. Esteve's selection of "economic-only" loss was a "meaningful selection" of UM coverage when he did not understand the impact of selecting this option.
The rejection/selection form must be on a separate page and there must be a separate signature line for rejection. Henson v. Safeco Insurance Company, 585 So.2d at 538. The Supreme Court in Daigle, 96-1662, p. 4, 691 So.2d at 1215, declared the necessity of the insurer to advise the insured "in plain and unambiguous language that Louisiana law requires all automobile liability policies issued or delivered in the state to afford uninsured motorist coverage `unless the insured shall reject such coverage.'" Thus, an insured must be informed that if he or she does nothing, i.e., makes no selection/rejection, then he or she would automatically have UM coverage pursuant to Louisiana law. We observe that the State Farm form does exactly all of the above.
*1004 Granted, it is understood that an insured cannot select an option that he does not know exists or select an option of which he is not informed. Tugwell, 609 So.2d at 199. The Esteves' argue that since they are retired and earn no wages and their health care is fully covered under Medicare, a selection of "economic-only" UM coverage is like a selection of no UM coverage. Therefore, they argue their selection was not "meaningful" as set forth in Tugwell. But in this case, the form itself fully explains the difference between economic losses and non-economic losses. Tugwell also requires that the insured acknowledge in writing that he has been informed of the options or that the application itself be setup in such a way through the use of blanks that it is apparent to the reasonable person that he has the option of selecting any lower limits he chooses. Tugwell, 609 So.2d at 199. We observe that the State Farm form fully complies with these mandates. "Meaningful selection," as referred to in Tugwell, means providing the insured with a clear, unambiguous selection form as discussed above. We conclude that the State Farm form meets these requirements.
The trial court's oral conclusions stated that the term "meaningful selection," as used by the Supreme Court in Tugwell, does not encompass whether or not the decision by the insured is a useful, meaningful or utilitarian decision insofar as the economic consequence that decision would have upon the insured. The Esteves argue that the trial court's interpretation of Tugwell is misplaced because when the Louisiana Supreme Court decided Tugwell in 1992, "economic-only" loss coverage was not available.[4]
We agree however, with the trial court. If Mr. Esteve did not understand the option he selected, it was not because of any legal insufficiency of the UM Waiver/Rejection-Selection form.
This allegation, therefore, is without merit.

Duty of State Farm Agent, Mike Bednarz
Plaintiffs argue that Mike Bednarz should have informed them that a selection of "economic-only" UM coverage was of little value to them since he knew them personally, was aware that they were retired, that their health care was covered on Medicare, and they maintained insurance on their home and two vehicles.
Plaintiffs argue that Mr. Esteve's deposition demonstrates that he did not know he was selecting "economic-only" UM coverage. He claims that he simply did not understand the UM rejection form and specifically went to see his agent to have the choices explained to him. Mr. Esteve's deposition clearly shows everyone at the agency was cooperative and explained the coverage to him. He does not claim that there was any fraud or other vices of consent involved. The Esteves seem to argue that since Tugwell mandates the insurer to provide the insured with a "meaningful selection," then the agent has a duty to determine the subjective insurance needs of the policyholder. The Esteves do not cite any authority for this proposition, and we can find none. Even if we were to infer for the sake of argument that such duty existed, Mr. Esteve's own testimony in deposition shows that the representatives in Bednarz's office answered every question asked and offered additional information as needed.
As discussed above, the selection/rejection form completely and thoroughly detailed *1005 the options available for UM coverage under Louisiana law. We are of the opinion that even the most casual reader of the form would easily understand the consequences and implications of the information provided therein. Mr. Esteve has not alleged lack of discussion of UM coverage, only that he did not understand the representatives' explanation of the form.
In Fontenot v. Champion, 597 So.2d 1258 (La.App. 3 Cir.1992), the court found that the insured's signature on a properly drafted and self-explanatory rejection form was enough to put the insured in a position to make an informed consent. Id. at 1259-1260.
We find that the rejection form signed by Mr. Esteve was self-explanatory and was not confusing or misleading in the least. The document contains ordinary size print, is self-explanatory, uses layman's terms and is neither confusing nor misleading. A person who signs a written document is presumed to have knowledge and understanding of that which he signs. Oncale v. Aetna Cas. and Sur. Co., 417 So.2d 471 (La.App. 1 Cir.1982). Failing any fraud or misconduct by the insurance agent (and we find no actual allegations of same in the pleadings, affidavits or deposition), the plaintiffs are bound by the written rejection/selection of UM coverage signed by Mr. Esteve.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiffs/appellants.
AFFIRMED.
NOTES
[1] The Honorable Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Thibodaux's $10,000/$20,000 policy limits were tendered to plaintiffs.
[3] The petition also alleges that LSA-R.S. 22:1406 is unconstitutional; this allegation was not raised on appeal.
[4] The law was amended by Acts 1997, No. 1476 § 3 (effective 9/6/98), to include "economic-only" coverage.