DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LEMARTEC CORPORATION,** et al.,
Appellants,

v.

**EAST COAST METAL STRUCTURES CORP.,**
Appellee.

No. 4D2023-0601

[May 15, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Scott R. Kerner, Judge; L.T. Case No. 50-2017-CA-010645-XXXX-MB.

Joy Spillis Lundeen, Felix X. Rodriguez, and Kelly R. Melchiondo of Bilzin Sumberg Baena Price & Axelrod LLP, Miami, for appellants.

Thomasina F. Moore of GrayRobinson, P.A., Tallahassee, for appellee.

DAMOORGIAN, J.

Lemartec Corporation ("Contractor"), Tellus Products, LLC ("Project Owner"), Philadelphia Indemnity Insurance Company ("Philadelphia"), and Suretec Insurance Company ("Suretec") (collectively "Defendants") appeal the order denying their motion for attorney's fees and the subsequent final judgment awarding prevailing party attorney's fees to East Coast Metal Structures Corp. ("Subcontractor"). For the reasons discussed below, we reverse the award of attorney's fees to Subcontractor in its entirety and remand for entry of an award of attorney's fees to Defendants.

## *Background*

The genesis of this appeal is a dispute arising out of the construction of a sugarcane bagasse processing facility located in Belle Glade, Florida ("the Project"). Our analysis of the issues related to the award of attorney's fees in this appeal necessarily requires a brief discussion of the underlying facts which led to the dispute.

Project Owner hired Contractor to design and construct the Project, which consisted of three separate buildings: an office building, a molding building, and a pulping building. Contractor thereafter issued bid drawings to prospective bidders for the steelwork to be completed on the three buildings. Contractor ultimately provided Subcontractor with Letters of Intent ("LOIs"). Each LOI identified the name of the building requiring work and a lump sum price to be paid for the work, and included express language that subcontracts were forthcoming. Shortly thereafter, Contractor sent Subcontractor three subcontracts, one for each building, providing for the fabrication, installation, and delivery of structural steel and miscellaneous metals. Unlike the LOIs, each of the subcontracts included a cross-default provision providing that if Subcontractor breached any of the subcontracts, Contractor could "offset all costs to complete the Work from this Subcontract Agreement and/or other contracts . . . to recompense the Contractor."

It is undisputed that Subcontractor did not sign the subcontracts. Nonetheless, the parties proceeded as if the subcontracts had been executed, with Subcontractor completing all of the steelwork for the office and molding buildings, and part of the work for the pulping building, pursuant to the subcontracts. Subcontractor failed, however, to supply and install the stairs in the pulping building, as required under the pulping building subcontract.

Project Owner eventually took over the Project from Contractor and assumed the three subcontracts with Subcontractor. After several months of delay, Project Owner began searching for a replacement subcontractor to complete the stairs and requested a deductive change order from Subcontractor. In response, Subcontractor provided a deductive change order for $12,300, which was less than the original estimated value of the stairs at the time of Subcontractor's bid. After Subcontractor refused to negotiate its proposed credit for the stairs, Project Owner sent Subcontractor a notice of default and eliminated the stairs from Subcontractor's scope of work. Subcontractor did not respond to the notice of default or attempt to cure the default; instead, Subcontractor recorded a claim of lien.

Project Owner thereafter hired a new subcontractor to complete the stairs at a cost of nearly $127,000. In light thereof, Project Owner refused to pay Subcontractor the balance owed on the subcontracts, including the retainages on the molding and office building subcontracts, pursuant to the cross-default provisions.

### *The Lawsuit*

Subcontractor then sued Defendants for the remainder of the balance. Subcontractor's operative complaint also disputed the validity of the unexecuted subcontracts and argued the LOIs should govern instead.

Subcontractor's complaint included five counts. **Count I** alleged claims against Contractor and its surety Philadelphia on the original payment bond pursuant to section 713.23, Florida Statutes. **Count II** alleged claims against Project Owner and its surety Suretec on the transfer payment bond pursuant to section 713.23, Florida Statutes. **Count III** alleged claims against Contractor and Project Owner for breach of contract on the pulping building, and sought $63,935.40. **Count IV** alleged claims against Contractor and Project Owner for breach of contract on the office and molding buildings, and sought $28,011.30 for the molding building and $10,065 for the office building. Finally, **Count V** alleged alternative quantum meruit claims against Contractor and Project Owner. In total, Subcontractor sought $102,011.70 in damages.

Defendants answered the complaint and raised several affirmative defenses seeking to avoid payment to Subcontractor for various reasons, including a claim for "set-off against any moneys owed to [Subcontractor]" for the cost of completing the stairs. Project Owner also filed a counterclaim against Subcontractor for breach of the pulping subcontract, and sought damages incurred as a result of Subcontractor's failure to complete the stairs. Subcontractor answered the counterclaim and asserted several affirmative defenses, including that Project Owner "failed to satisfy all conditions precedent to bringing this action."

The matter ultimately proceeded to a ten-day bench trial. Prior to trial, the parties filed a joint pretrial stipulation wherein they listed the following relevant disputed issues of fact for determination at trial:

> 1. Whether the parties ever entered into written subcontract agreements for the office building, molding building and pulping building . . . .
>
> 2. Whether the parties' actions provided assent to the unsigned subcontracts for the office building, molding building, and pulping building.
>
> 3. Whether the Defendants breached the parties' agreements related to the office building, molding building and pulping building . . . .

3

4. Whether [Subcontractor] breached the parties' agreements by not supplying and installing the stairs at the pulping building in a timely fashion.

5. The amount of damages sustained on account of any breach of the contract by any party.

6. The reasonable value of the pulping stairs.

7. Whether [Subcontractor] has perfected and is entitled to foreclose its mechanic's lien.

### *Final Merits Judgment*

Following the bench trial, the trial judge—Judge Howard Coates—entered a detailed 35-page final judgment. The final judgment was divided into two parts: the first part addressed whether the LOIs or unexecuted subcontracts governed, and the second part addressed damages.

Regarding whether the LOIs or subcontracts governed, the trial judge began his analysis by noting that "the primary dispute is over which contract controls." The trial judge ultimately concluded the LOIs were not enforceable, and that the subcontracts were enforceable and governed despite the lack of signatures.

Regarding the amounts owed between the parties, the trial judge found Subcontractor was entitled to $10,065 for the office building, $28,011.30 for the molding building, and $33,821.40 for the pulping building, for a total of $71,897.70. The trial judge also found Subcontractor failed to perfect its claims against the bonds, and therefore could not collect on the payment bonds. On the counterclaim, the trial judge found Subcontractor was properly defaulted and breached the pulping building subcontract by failing to install the stairs, and awarded Project Owner $42,414 for the reasonable value of the stairs. The trial judge also found Project Owner was entitled to offset the $42,414 against the $71,897.70 awarded to Subcontractor pursuant to the cross-default provisions, leaving Subcontractor with a total award of $29,483.70 (or $36,304.51 after interest).

Based on these findings, the trial judge entered judgment on each of the complaint's five counts and the counterclaim as follows.

4

As to Counts I and II, which sought to collect on the payment bond and transfer payment bond, the trial judge entered judgment in favor of Defendants.

As to Count III, which sought damages against Contractor and Project Owner for breach of the pulping subcontract, the trial judge stated that although it awarded Subcontractor $33,821.40 in damages on that count, "this amount was completely setoff [by the amount] due to [Project Owner] in the amount of $42,414.00 (all of which arises out of [Subcontractor's] failure under the pulping subcontract)." Therefore, the trial judge entered judgment in favor of Project Owner and Contractor on count III.

As to Count IV, which sought damages for breach of the office and molding subcontracts, the trial judge setoff the remaining $8,592.60 due to Project Owner against the $38,076.30 awarded to Subcontractor. "As such, after applying the amount of the remaining setoff and determining that it is not sufficient to set off in its entirety the amounts due to [Subcontractor] under either the office or molding subcontracts, the Court enters judgment in favor of [Subcontractor]."

As to Count V, which alleged alternative quantum meruit claims, the trial judge entered judgment in favor of Project Owner and Contractor based on its finding that the subcontracts were enforceable.

Finally, as to the counterclaim, the trial judge entered judgment in favor of Project Owner "in the amount of $42,414.00, which amount shall be applied in setoff of the amounts due [Subcontractor] as provided herein."

Subcontractor thereafter appealed the final merits judgment, and we per curiam affirmed. *See E. Coast Metal Structures, Corp. v. Lemartec Corp.*, 357 So. 3d 116 (Fla. 4th DCA 2023).

### *Denial of Defendants' Motion for Attorney's Fees*

Following entry of the final merits judgment, Subcontractor moved for attorney's fees pursuant to the prevailing party fee provision in the subcontracts.

Defendants, in turn, moved for attorney's fees under three separate grounds. First, Defendants moved for attorney's fees pursuant to the prevailing party fee provision in the subcontracts. Second, Defendants moved for attorney's fees pursuant to section 713.29, Florida Statutes (2017), which provides for prevailing party fees in any action brought to enforce a claim against a bond. Lastly, Defendants moved for attorney's

fees under section 768.79, Florida Statutes (2021), pursuant to a rejected joint proposal for settlement for $62,000 which they had served on Subcontractor five months prior to trial.  The proposal was made on behalf of all Defendants for the purpose of resolving all claims, including the counterclaim, with Project Owner offering to pay the entire $62,000 settlement amount and Contractor and the two sureties each offering to contribute $0.00.

After the parties filed their motions, Judge Coates, who had presided over the trial and issued the final merits judgment, rotated out of the division, and Judge Scott Kerner rotated in as successor judge.  Following a hearing on the competing motions, the successor judge entered an order granting Subcontractor's motion for attorney's fees pursuant to the prevailing party fee provision in the subcontracts, and denying Defendants' motion for attorney's fees in its entirety.

Regarding entitlement to attorney's fees under the subcontracts, the successor judge concluded Subcontractor was the prevailing party.  In so concluding, the successor judge primarily relied on the fact that Subcontractor "achieved some of the benefit it [s]ought in bringing suit by recovering a money judgment for work it completed on the Project," and Contractor and Project Owner "failed on their affirmative defenses to entirely <u>avoid payment</u> to [Subcontractor] altogether."  The successor judge also rejected the contention that a significant issue in the litigation upon which Defendants had prevailed was whether the subcontracts were enforceable, reasoning that was "not an issue which determined the overall outcome of this action, nor the amount of damages the Court awarded."

Regarding Defendants' request for attorney's fees under section 768.79, Florida Statutes (2021), the successor judge concluded Defendants were not entitled to an award of attorney's fees under the statute for two primary reasons.  First, the successor judge concluded Defendants' proposal for settlement was not made in good faith because it "was served only after the instant action had been pending for more than three years and was already on the trial docket," and because Defendants thereafter sought to amend their affirmative defenses to assert an "argument that would materially reflect how they perceived [Subcontractor's] damages in this case."  Second, citing our holding in *Hoang Dinh Duong v. Ziadie*, 153 So. 3d 354 (Fla. 4th DCA 2014), the successor judge concluded none of the Defendants were entitled to recover attorney's fees under the joint proposal because the amount offered by Contractor—$0—was not 25% more than the amount recovered by Subcontractor.

Finally, regarding Defendants' request for prevailing party attorney's fees under section 713.29, Florida Statutes (2017), the successor judge concluded that although Subcontractor did not prevail on its claims to enforce against the payment bonds, "[i]t would be inequitable to award attorney's fees to the Defendants on the lien counts when [Subcontractor] prevailed on its claim for the payment for its completed work."

Following another hearing to determine the amount of Subcontractor's attorney's fees, the successor judge entered a final judgment awarding Subcontractor a total of $446,628.65 in attorney's fees and costs. This appeal follows.

### *Analysis*

"The standard of review of a trial court's ruling on the issue of entitlement to prevailing party attorney's fees is abuse of discretion. The trial court has broad discretion to determine which party prevailed in the litigation." *Skylink Jets, Inc. v. Klukan*, 308 So. 3d 1048, 1051 (Fla. 4th DCA 2020) (internal citation omitted).

However, a party's entitlement to receive attorney's fees under a statute is generally reviewed *de novo*. *See Spanakos v. Hawk Sys., Inc.*, 362 So. 3d 226, 236 (Fla. 4th DCA 2023) ("Generally, a party's entitlement 'to receive attorney's fees and costs pursuant to section 768.79 and rule 1.442 is reviewed *de novo*.'" (quoting *Pratt v. Weiss*, 161 So. 3d 1268, 1271 (Fla. 2015))); *Newman v. Guerra*, 208 So. 3d 314, 317 (Fla. 4th DCA 2017) (stating, in the context of a fee award under section 713.29, Florida Statutes, that "[a] party's entitlement to an award of attorneys' fees under a statute or a procedural rule is a legal question subject to de novo review").

### *1. Subcontracts*

Defendants argue the successor judge abused its discretion when it determined Subcontractor prevailed on the significant issues in the litigation. Defendants maintain that by concluding Subcontractor was the prevailing party because it achieved "some of the benefit it [s]ought in bringing suit by recovering a money judgment," the successor judge improperly applied the "net judgment rule" and ignored the fact that Defendants prevailed on all but one of the counts. Moreover, the successor judge ignored the significant issues identified by the trial judge in the merits judgment and failed to appreciate the significance of the rulings therein, including the significance of the setoffs. We agree.

7

In *Moritz v. Hoyt Enterprises, Inc.*, the Florida Supreme Court declared "that the party prevailing on the significant issues in the litigation is the party that should be considered the prevailing party for attorney's fees." 604 So. 2d 807, 810 (Fla. 1992). The court explained that "the fairest test to determine who is the prevailing party is to allow the trial judge to determine from the record which party has in fact prevailed on the significant issues tried before the court." *Id.* Ultimately, the *Moritz* court held the trial court in that case was within its discretion when it concluded that a contractor prevailed on the significant issues in the litigation, even though the owners who breached the contract recovered an amount which exceeded the damages awarded to the contractor on its counterclaim. *Id.* In so holding, the *Moritz* court disapproved of cases holding that the prevailing party is the one who recovers an affirmative judgment. *Id.* at 809–10.

One year after deciding *Moritz*, the Florida Supreme Court considered the interplay between the "net judgment rule" in cases involving enforcement of a mechanic's lien and the decision in *Moritz*. *See Prosperi v. Code, Inc.*, 626 So. 2d 1360, 1362–63 (Fla. 1993). Ultimately, the court concluded:

> *Moritz* now requires a more flexible application. The fact that the claimant obtains a net judgment is a significant factor but it need not always control the determination of who should be considered the prevailing party. We hold that in considering whether to apply the net judgment rule, the trial judge must have the discretion to consider the equities and determine which party has in fact prevailed on the significant issues.

*Id.* at 1363.

As *Moritz* and *Prosperi* make clear, the mere fact that a party recovers an affirmative judgment does not control the prevailing party determination, including in breach of contract cases.

Our holding in *Skylink Jets, Inc. v. Klukan*, 308 So. 3d 1048 (Fla. 4th DCA 2020), is particularly instructive. In that case, the plaintiff air carrier hired the defendant pilot. *Id.* at 1049. In connection with his employment with air carrier, pilot signed two agreements: (1) a personal loan agreement with air carrier's president for $8,908.64 (representing flight training and related expenses), which was allegedly assigned to air carrier; and (2) a pilot training expense agreement with air carrier for $8,617.03, which included language providing that all previous contracts between air carrier

and pilot were "null and void." *Id.* Both agreements required pilot to repay the amounts if he quit or was terminated within the repayment period. *Id.*

Air carrier ultimately sued pilot after he resigned within the repayment period. *Id.* The operative complaint sought $20,419.73 in damages and included five counts, including two breach of contract counts (one for each agreement), one unjust enrichment count, one money lent count, and one promissory note count. *Id.* Prior to trial, the parties filed a joint pretrial stipulation wherein they stipulated: pilot executed both agreements; the president paid for pilot's training as set forth in the personal loan agreement; air carrier paid for the training and related expenses as set forth in the pilot training expense agreement; and pilot did not reimburse air carrier for the cost of his training or make any payments on the personal loan agreement. *Id.* at 1049–50. The joint pretrial stipulation also stated the disputed issues for trial were the amount of air carrier's damages and the validity of the assignment of the personal loan agreement from the president to air carrier. *Id.* at 1050.

Following a bench trial, the trial court entered judgment in air carrier's favor based on pilot's breach of the pilot expense training agreement, but denied recovery on air carrier's remaining four counts. *Id.* The court ruled air carrier was entitled to $8,617.03 (the amount of training expenses expressly set forth in the pilot expense training agreement) plus interest, less a $2,000 credit that air carrier owed to pilot for four unpaid flights. *Id.* The court thereafter entered final judgment awarding air carrier $6,617.03 in damages plus $2,624.50 in interest, for a total of $9,241.53. *Id.* Air carrier thereafter moved for attorney's fees pursuant to the prevailing party fee provision in the pilot expense training agreement. *Id.* The trial court ultimately determined air carrier did not prevail on the significant issues in the litigation and thus was not the prevailing party for purposes of an award of attorney's fees. *Id.*

On appeal, air carrier argued it was entitled to attorney's fees because it "prevailed on the breach of contract claim in Count I of the Amended Complaint which was a significant issue in litigation which achieved some of the benefit sought by [air carrier] in bringing suit." *Id.* at 1051. In affirming the trial court's determination that air carrier did not prevail on the significant issues in the litigation, we reasoned as follows:

> Although [air carrier] established that [pilot] breached the Pilot Training Expense Agreement, [pilot's] liability under the Pilot Training Expense Agreement was a relatively insignificant issue in the litigation. [Pilot] admitted in both the pretrial stipulation and in a deposition that he had not

9

reimbursed [air carrier] for the training expenses that were the subject of the Pilot Training Expense Agreement.

The amount of damages was the real point of contention between the parties. [Air carrier] had sought over $20,000 in the litigation, but [air carrier] recovered only $6,617.03 (excluding interest). Notably, [air carrier] sought damages under a voided agreement, failed to credit [pilot] for flights that reduced his debt, and sought an inflated amount of damages under the Pilot Training Expense Agreement.

. . . .

[Air carrier] failed to prevail on four out of five of its counts and only partially prevailed on Count I. Although [air carrier] prevailed on an issue of liability as to Count I, it was an issue that was not seriously contested and thus was not a significant issue in the litigation. [Pilot] largely prevailed on the significant issue of damages by defeating most of [air carrier's] claimed damages, making the case a wash.

*Id.* at 1053–54 (footnotes omitted). In so holding, we reiterated that just because air carrier "recovered an affirmative judgment does not control the prevailing party determination" under *Moritz. Id.* at 1053.

Here, the parties did not dispute that Subcontractor completed the work on the office and molding buildings and failed to complete the stairs in the pulping building. Nor did the parties dispute the retainage amounts owed on the office and molding buildings. Rather, the real points of contention between the parties, and thus the significant issues in the litigation, concerned: (1) whether the subcontracts were enforceable, and thus whether Project Owner could apply the cross-default provisions to offset its damages against any amounts recovered by Subcontractor; (2) whether Subcontractor was properly defaulted on the pulping subcontract, and thus whether damages could be assessed against Subcontractor for the value of the stairs; (3) the reasonable value of the stairs; and (4) whether Subcontractor properly perfected its claims against the bonds. The amount of damages, therefore, was clearly a significant point of contention between the parties.

The trial judge ultimately found: the subcontracts, and thus the cross-default provisions, were enforceable; Subcontractor breached the pulping subcontract and was properly defaulted; the reasonable value of the stairs was $42,414; and the claims against the bonds were not properly

perfected. In light of the trial judge's findings and application of the cross-default provisions, Subcontractor failed to prevail on four out of five of its counts and only partially prevailed on Count IV (breach of the office and molding buildings) by obtaining a $29,483.70 judgment (excluding interest). Thus, as in *Skylink*, Defendants largely prevailed on the significant issue of damages by defeating most of Subcontractor's claimed $102,011.70 in damages.

Yet in determining Defendants did not prevail on the significant issues in the litigation, the successor judge primarily relied on three factors. First, the successor judge concluded Subcontractor "achieved some of the benefit it [s]ought in bringing suit by recovering a money judgment for work it completed on the Project." However, the mere fact that Subcontractor recovered an affirmative judgment does not control the prevailing party determination, especially in a situation like here where Subcontractor did not come close to recovering the damages sought in the complaint.

Second, the successor judge concluded Defendants were unsuccessful in entirely avoiding payment to Subcontractor as the amount awarded to Project Owner for the reasonable value of the stairs ($42,414) was significantly less than requested ($127,000). This reasoning, however, ignores the fact that Defendants nonetheless defeated most of Subcontractor's claimed damages. As our *Skylink* holding demonstrates, a defendant who successfully defeats most of a plaintiff's claimed damages can be considered the prevailing party, especially when the amount of damages is a significant point of contention between the parties.

Third, the successor judge concluded the subcontracts' enforceability was not a significant issue because that issue did not determine "the overall outcome of this action, nor the amount of damages the Court awarded." This conclusion, however, is contrary to the trial judge's finding in the merits judgment that "the primary dispute is over which contract controls." Moreover, the enforceability of the subcontracts, and in turn the cross-default provisions, significantly impacted the amounts ultimately recovered by Subcontractor. For example, as a result of applying the $42,414 awarded to Project Owner on its counterclaim as a setoff against Subcontractor's damages pursuant to the cross-default provisions, judgment was entered in favor of Contractor and Project Owner on Count III (breach of pulping subcontract). Likewise, as to Count IV (breach of office and molding subcontracts), Subcontractor received a reduced amount of damages after the remaining setoff was applied. Thus, as a result of the cross-default provisions, Subcontractor received none of the benefit which it had sought on Count III and received only a portion of

the benefit which it had sought on Count IV. The enforceability of the subcontracts was therefore not only a significant issue in the litigation, but also significant to the prevailing party determination. *See Hayward Baker, Inc. v. Westfield Ins. Co.*, 313 So. 3d 772, 775 (Fla. 2d DCA 2020) (holding that the ruling on the setoff issue "was pivotal to the prevailing party determination" because "[t]he result of applying the setoff against [plaintiff's] damages award was that [plaintiff] received none of the benefit it sought in the litigation").

Under these circumstances, we hold the successor judge abused its broad discretion in determining Defendants were not the prevailing party for purposes of an award of attorney's fees under the subcontracts.

### 2. Section 713.29, Florida Statutes

Defendants next argue the successor judge erred in declining to award attorney's fees to the two sureties, Philadelphia and Suretec, under section 713.29, Florida Statutes (2017). We agree.

Section 713.29, Florida Statutes (2017), governs the award of attorney's fees in actions to enforce a claim against a bond and states:

> In any action brought to enforce a lien or to enforce a claim against a bond under this part, the prevailing party is entitled to recover a reasonable fee for the services of her or his attorney for trial and appeal or for arbitration, in an amount to be determined by the court, which fee must be taxed as part of the prevailing party's costs, as allowed in equitable actions.

§ 713.29, Fla. Stat. (2017).

In determining which party prevailed for purposes of an award of attorney's fees under section 713.29, courts apply the "significant issues" test set forth in *Moritz*. *See Newman*, 208 So. 3d at 317. In applying the "significant issues" test to section 713.29 attorney's fees, courts have held that when a defendant successfully resists enforcement of a lien yet is nevertheless found liable in damages in the same case, the defendant is not considered the prevailing party for purposes of section 713.29 attorney's fees. *See Prosperi*, 626 So. 2d at 1362 ("[I]t was obviously not the intent of the legislature to award attorneys' fees to a defendant in a mechanics' lien foreclosure merely because he successfully defends against the impression of a lien yet is nevertheless found liable in damages, in the same case, for labor and/or materials furnished for his benefit." (alteration in original) (citation omitted)).

In the present case, the sureties successfully resisted enforcement of Subcontractor's lien against the payment bonds, thereby prevailing on the only claims asserted against them. Moreover, the sureties were not otherwise found liable to Subcontractor for damages, unlike Contractor and Project Owner, and thus the sureties were the prevailing party for purposes of entitlement to attorney's fees under section 713.29, Florida Statutes (2017). *See AAA Sod, Inc. v. Weitzer Corp.*, 513 So. 2d 750, 750–51 (Fla. 4th DCA 1987) (holding that although the plaintiff contractor obtained a money judgment against the *owner*, the contractor did not prevail on its claim against the surety to enforce its lien against the bond and therefore the surety was entitled to prevailing party attorney's fees under section 713.29, Florida Statutes); *M & P Concrete Prods., Inc. v. Woods*, 590 So. 2d 429, 430 (Fla. 4th DCA 1991) (reiterating that the reason why the surety in *AAA Sod, Inc.* was entitled to prevailing party attorney's fees was because "like the owner, it was successful in defeating the contractor's claim of lien but, unlike the owner, the judgment for damages against the owner was not likewise against the surety" and "[s]o the surety was the prevailing party under the lien statute").

Accordingly, we hold the successor judge erred in denying the sureties attorney's fees under section 713.29, Florida Statutes (2017).

### 3. Section 768.79, Florida Statutes

Defendants lastly argue the successor judge erred in denying their request for attorney's fees under section 768.79, Florida Statutes (2021). We agree.

Section 768.79, Florida Statutes (2021), creates a mandatory right to attorney's fees where a plaintiff refuses to accept a proposal for settlement from the defendant and the ensuing final judgment is either one of no liability or is at least 25% less than the defendant's offer to the plaintiff. § 768.79(1), Fla. Stat. (2021). "[T]he offer-of-judgment statute operates to penalize a party who refuses to accept a good-faith, reasonable proposal for settlement as reflected in the ensuing final judgment." *Coates v. R.J. Reynolds Tobacco Co.*, 365 So. 3d 353, 356 (Fla. 2023).

We first address the successor judge's finding that the proposal for settlement was not made in good faith due to the temporal proximity of the offer to the trial date, and the fact that Defendants later moved to amend their affirmative defenses to purportedly assert an "argument that would materially reflect how they perceived Plaintiff's damages in this case."

Section 768.79(7)(a), Florida Statutes (2021), permits a trial court to disallow an award of attorney's fees if it finds the offeror did not make its offer in good faith. A good faith determination, in turn, "rests on whether the offeror has a reasonable foundation on which to base the offer. '[S]o long as the offeror has a basis in known or reasonably believed fact to conclude that the offer is justifiable, the good faith requirement has been satisfied.'" *Arrowood Indem. Co. v. Acosta, Inc.*, 58 So. 3d 286, 289 (Fla. 1st DCA 2011) (alteration in original) (internal citations omitted). "Whether the offeror has a reasonable basis to support the offer is 'determined solely by the subjective motivations and beliefs of the offeror.'" *Id.* (citation omitted).

Regarding the timing of the offer, no evidence suggests the mere timing of the offer diminished Defendants' reasonable foundation upon which they based their offer. *See Liggett Grp., Inc. v. Davis*, 975 So. 2d 1281, 1285 (Fla. 4th DCA 2008) (holding that the timing of the offer "in and of itself was insufficient proof to warrant further discovery on the issue of good faith"); *Progressive Select Ins. Co. v. Kagan Jugan & Assocs., P.A.*, 348 So. 3d 1168, 1173 (Fla. 2d DCA 2022) ("Progressive's offer reflected its legally correct belief that it was not liable. The timing of the offer did not diminish Progressive's reasonable foundation upon which it based its offer."). If anything, Defendants apparently were attempting to compromise on the setoff amount in an effort to avoid further litigation, which is the very purpose of the statute. *See Kuhajda v. Borden Dairy Co. of Ala., LLC.*, 202 So. 3d 391, 395 (Fla. 2016) ("The purpose of section 768.79 is to 'reduce litigation costs and conserve judicial resources by encouraging the settlement of legal actions.'" (citation omitted)).

Regarding Defendants' actions after the offer was rejected, the record reflects that the day prior to trial, Defendants moved to amend one of their affirmative defenses. Specifically, they sought to amend their preexisting setoff defense to clarify "that under either legal or equitable theory [they] would be entitled to setoff" for the pulping stairs. The trial judge denied the motion to amend, reasoning, in part, that the amendment did not appear necessary. From these actions, the successor judge concluded Defendants' offer was not made in good faith because the amendment sought "to materially reflect how they perceived Plaintiff's damages in this case." This conclusion is simply not true, as the amendment merely sought to clarify Defendants' preexisting setoff defense and did not otherwise seek to change how Defendants perceived Subcontractor's damages.

We next address the successor judge's finding that none of the Defendants were entitled to recover attorney's fees under the joint proposal

because the amount offered by Contractor—$0—was not 25% more than the amount recovered by Subcontractor.

Florida Rule of Civil Procedure 1.442(c) governs the form and content of a proposal for settlement. In relevant part, rule 1.442(c)(3) allows joint proposals under certain conditions and requires that the proposal "state the amount and terms attributable to each party." Generally, in order to obtain attorney's fees under a rejected joint proposal for settlement, the verdict as to each defendant/offeror must be of no liability or at least 25% less than the amount offered by each individual offeror. *See Hoang Dinh Duong v. Ziadie*, 153 So. 3d 354, 360 (Fla. 4th DCA 2014) (holding, in the context of an "all of nothing" joint proposal, that "if the verdict for *any* of the claimants was not twenty-five percent higher than the amount of that claim in the settlement proposal, then *none* of the claimants could obtain attorney's fees under its terms").

In the present case, although the amount offered by Contractor—$0— was not 25% more than the amount Subcontractor recovered against Contractor, Defendants were nonetheless entitled to attorney's fees under section 768.79, Florida Statutes (2021). This is because Subcontractor sought the same indistinguishable amount of damages from each Defendant. Moreover, Contractor's liability in this case was strictly technical considering Project Owner previously assumed the subcontracts and all liabilities thereunder, and the sureties' liability was strictly vicarious. Under these circumstances, Defendants were not required to apportion the offer amount in their joint proposal, let alone demonstrate that the *individual* amounts set forth in the proposal for each Defendant was at least 25% more than the judgment amount. *See* Fla. R. Civ. P. 1.442(c)(4) ("Notwithstanding subdivision (c)(3), when a party is alleged to be solely vicariously, constructively, derivatively, or technically liable, whether by operation of law or by contract, a joint proposal made by or served on such a party need not state the apportionment or contribution as to that party."); *Webjet Linhas Aereas S.A. v. ZGA Aircraft Leasing, Inc.*, No. 3D22-1736, 2024 WL 1183572, at *3 (Fla. 3d DCA Mar. 20, 2024) ("When, as here, a plaintiff alleges that one of the two defendants being sued is solely *constructively* liable for damages caused by the other named defendant's conduct, apportioning a joint proposal's settlement offer between the two offerors is entirely unnecessary and serves no meaningful purpose."); *Strahan v. Gauldin*, 756 So. 2d 158, 161 (Fla. 5th DCA 2000) (holding plaintiff "could not logically apportion his offer among the [two defendants] because each of the individual defendants were liable for the entire amount of damages"), *abrogated on other grounds by Allstate Ins. Co. v. Sarkis*, 800 So. 2d 6 (Fla. 5th DCA 2001).

Accordingly, as the total amount awarded to Subcontractor ($36,304.51 inclusive of interest) was at least 25% less than the total proposal amount ($62,000), Defendants were entitled to an award of attorney's fees under section 768.79, Florida Statutes (2021).

### *Conclusion*

For the reasons set forth in this opinion, we reverse the entitlement order and fee judgment, and remand for the successor judge to: (1) enter an order awarding attorney's fees and costs to all Defendants pursuant to section 768.79, Florida Statutes (2021), to Contractor and Project Owner pursuant to the subcontracts, and to Philadelphia and Suretec pursuant to section 713.29, Florida Statutes (2017); and (2) conduct further proceedings to determine the reasonable amounts of attorney's fees and costs to award Defendants.

*Reversed and remanded.*

GROSS and GERBER, JJ., concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***

16